

*#839183*
*K. roop*

### STATE OF TENNESSEE
## DEPARTMENT OF COMMERCE AND INSURANCE
### 500 JAMES ROBERTSON PARKWAY
### NASHVILLE, TN 37243-1131

June 24, 2008

Cincinnati Insurance Company, The
P O Box 145496
Cincinnati, OH  45250
NAIC # 10677

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
7006 2760 0002 9676 0437
Cashier # 3816

Re: Jeff Gieringer  V.  Cincinnati Insurance Company, The

    Docket # 2008-0417-I

To Whom It May Concern:

We are enclosing herewith a document that has been served on this department on your behalf in connection with the above-styled matter.

I hereby make oath that the attached Complaint was served on me on June 20, 2008 by Jeff Gieringer pursuant to Tenn. Code Ann. § 56-2-504 or § 56-2-506. A copy of this document is being sent to the Circuit Court of Sevier County, TN.

Brenda C. Meade
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Sevier County
    125 Court Avenue, Ste 204E
    Sevierville, Tn  37862

REGION V
K. ROOP  #3

JUN 2 7 2008

LCR ☐    FILE ☐
CR ☐    RUSH ☐

**EXHIBIT**
*1*



## IN THE CIRCUIT COURT FOR SEVIER COUNTY, TENNESSEE

JEFF GIERINGER,                              )
                                             )
      Plaintiff,               )
                                             )
v.                                           )   Docket No. 2008- 0417-I
                                             )   **Twelve-Person Jury Demanded**
THE CINCINNATI INSURANCE                     )
COMPANIES,                                   )
                                             )
      Defendant.               )

CIRCUIT COURT
FILED
HOUR 1.4 P M

JUN 1 6 2008

RITA D. ELLISON, CLERK
SEVIER COUNTY, TN

## COMPLAINT

Comes the plaintiff, by and through counsel and files this, his cause of action against

the defendant as follows:

    1.    That the Plaintiff is a citizen and resident of Sevier County, Tennessee.

    2.    That the defendant is a foreign corporation authorized to conduct business

within the state of Tennessee including Sevier County, Tennessee by the Tennessee

Department of Commerce and Insurance.

    3.    That on September 8, 2006 the defendant issued a homeowner's insurance

policy to the plaintiff under policy number HO10341086 with a policy period of September 8,

2006 to September 8, 2007.  (See attached insurance policy as Exhibit 1)

    4.    That at the time that the homeowner's insurance policy was issued by the

defendant to the plaintiff the plaintiff resided at 4769 Pleasant Grove Road in Lexington,

Kentucky.  However, on January 18, 2008 the plaintiff moved all personal property owned by

the plaintiff to a new residence located at 722 Powder Mill Road, Gatlinburg, Tennessee

37738.  On January 24, 2008 the plaintiff's personal property was destroyed by a fire which

occurred at the new residence located at 722 Powder Mill Road, Gatlinburg, Tennessee  37738.

5. That following the fire event which destroyed the plaintiff's personal property, a homeowner's claim for the loss of that personal property was made by the plaintiff including the preparation of a proof of loss and schedule of contents at the request of the defendant.

6. That following the claim by the plaintiff, the defendant denied the plaintiff's claim except for the offer of a payment of $1,000.00.

7. That the defendant is in breach of contract for failing and otherwise refusing to honor the plaintiff's claim for the total loss of his personal property contents in violation of the homeowner's insurance policy issued by the defendant to the plaintiff all for which the defendant is liable as a matter of law.

8. That the defendant has violated the Tennessee Consumer Protection Act by failing and refusing to honor the terms and conditions of its policy of homeowner's insurance coverage with the plaintiff and by failing to honor the plaintiff's claim for the total loss and destruction of his personal property all for which the defendant is liable as a matter of law.

**WHEREFORE**, the Plaintiff prays as follows:

a) that service of process be issued and served upon the defendant through the Tennessee Department of Commerce and Insurance requiring the defendant to answer according to law;

b) that upon a hearing of this matter before a jury of twelve persons a judgment for compensatory damages be entered against the defendant in an amount not to exceed $299,250.00 for the loss of the plaintiff's personal property;

c) that the plaintiff be awarded treble damages for the defendant's violation of the Tennessee Consumer Protection Act and that the plaintiff be awarded attorneys fees all in addition to the judgment for compensatory damages for the loss of the personal property;

d) that the plaintiff be awarded his prejudgment interest;

taxed against the defendant.

Respectfully submitted the 12 day of June, 2008.

Respectfully submitted.

**TRAMMELL, ADKINS, & WARD, P.C.**

By_____
Terrill L. Adkins, Esq., BPR#013138
Attorney for Plaintiff
P.O. Box 51450
Knoxville, TN 37950-1450
(865) 330-2577

## COST BOND

We acknowledge ourselves as surety for all costs and taxes in this cause in accordance with Tennessee Code Annotated 20-12-120.

This the 12 day of June, 2008.

**TRAMMELL, ADKINS & WARD, P.C.**

By_____
Terrill L. Adkins

# Your Personal

# Insurance Policy



**THE**

## CINCINNATI INSURANCE COMPANIES

MAILING ADDRESS:   P.O. Box 145496, Cincinnati, Ohio 45250-5496
HOME OFFICE:   6200 S. Gilmore Road, Fairfield, Ohio 45014-5141
PHONE:   (513) 870-2000

THIS POLICY JACKET WITH THE POLICY FORM, DECLARATIONS PAGE, AND ENDORSEMENTS
ENCLOSED, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THE POLICY.



THE
**CINCINNATI INSURANCE COMPANY**

**POLICY NUMBER**
H01 0341086

Image 1

# EXECUTIVE HOMEOWNER
# DECLARATIONS

**Policy Period: From 09/08/2006 To 09/08/2007**
12:01 a.m. Standard Time at the Address of the Named Insured

New Business

H01 0341086
**Named Insured & Address**
Jeff Gieringer
4769 PLEASANT GROVE RD
LEXINGTON, KY 40515-1236

**Please refer any questions to your agent:**
Kentucky Insurance Agency Inc
1050 Chinoe Road Suite 103
Lexington, KY 40502-0000
(859)277-8877

**Agency** 16419    **Producer** Lou Sparks

County of FAYETTE

Unless otherwise stated, the residence premises covered by this policy is located at the above address.

Your premium for this policy includes a tax which will be remitted to the municipality or county in which you reside. The amount of the tax is shown on your policy.

PAYOR - Mortgagee

| | |
|---|---|
| **Billing Method:** | Direct Bill |
| **Current Pay Plan:** | Annual Pay |
| **Initial Installment:** | $1,159.00 |
| **Remaining Installments:** | |
| **Total Premium:** | $1,159.00 |

THIS IS NOT A BILL. You will receive a separate invoice if a premium charge or return is due.

By:

DDH 08/04
08/04/2006
H01 0341086
ORIGINAL COPY



THE
## CINCINNATI INSURANCE COMPANY

POLICY NUMBER
H01 0341086

Image 1

## EXECUTIVE HOMEOWNER
## DECLARATIONS

**Policy Period: From 09/08/2006 To 09/08/2007**
12:01 a.m. Standard Time at the Address of the Named Insured

New Business

### COVERAGES AND LIMITS OF INSURANCE

| | | |
|---|---|---|
| SECTION I | A. Dwelling | $380,000 |
| | B. Other Structures | $38,000 |
| | C. Personal Property | $285,000 |
| | D. Loss of Use | Actual Loss |
| | DEDUCTIBLE (SECTION I ONLY)    $1,000 | |
| | *Applies to all causes of loss unless otherwise noted.* | |
| SECTION II | E. Personal Liability - Each Occurrence | $500,000 |
| | F. Medical Payments to Others - Each Person | $5,000 |

### The following credits have been applied to your policy:

Deductible Credit
Dwelling Age
Preferred Risk Credit (1 Loss/6 Years)

| | |
|---|---|
| BASIC PREMIUM SUBTOTAL | $1,080.00 |

### OTHER COVERAGES, ENDORSEMENTS AND CHARGES

| | | |
|---|---|---|
| Executive Form - Your Homeowner Policy - Kentucky | ExecutiveKY (5/06) | |
| Notice of Privacy Practices | MI1659 (5/05) | |
| Notice to Policyholders Your Credit-Based Insurance Score | MI1785 (7/06) | |
| Earthquake Coverage | | Included |
| Section I - Fungi, Wet or Dry Rot, or Bacteria - Limit of Insurance Schedule | HR929 (10/04) | Included |
| Section II - Fungi, Wet or Dry Rot, or Bacteria - Limit of Insurance Schedule | HR932 (10/04) | Included |

OTHER COVERAGES, ENDORSEMENTS AND CHARGES PREMIUM

The sum of all installment fee charges applied to your policy (in accordance with the current policy period and the pay plan selected) is:

$0.00

By:



**THE**
# CINCINNATI INSURANCE COMPANY

POLICY NUMBER
H01 0341086

Image 1

## EXECUTIVE HOMEOWNER
## DECLARATIONS

**Policy Period: From 09/08/2006 To 09/08/2007**
12:01 a.m. Standard Time at the Address of the Named Insured

New Business

**KENTUCKY TAXES**

| | | |
|---|---|---|
| County Tax | Code: 2 | |
| Municipal Tax | Code: 2 | $63.00 |
| State Tax | | $16.00 |

| | |
|---|---|
| TOTAL KENTUCKY TAXES | $79.00 |
| **TOTAL POLICY PREMIUM** | **$1,159.00** |

Territory 5   1 Family   Masonry Veneer          Built 1992   Protection Class 2   Premium Group 131      Within 100 ft from Hydrant
Within 1 miles from Fire Dept.   Building Code Effectiveness Grade: Un      Tax Location:          Fire Dept: zone 1 fay co

First Mortgagee :
SELECT PORTFOLIO SERVICING
ISAOA ATIMA
PO BOX 2967
PHOENIX, AZ 85062-2967
Loan #0007242126

By:

08/04/2006
ORIGINAL COPY

# EXECUTIVE FORM - YOUR HOMEOWNER POLICY - KENTUCKY

**PLEASE READ YOUR POLICY!** This cover sheet provides only a brief outline of some of the important features of your policy. This is not an insurance contract and only the actual policy will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company. IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.

## QUICK REFERENCE INDEX

| | Page |
|---|---|
| DECLARATIONS: | Declarations Page |
|     Your Name | Declarations Page |
|     Location of Your Residence | Declarations Page |
|     Policy Period | Declarations Page |
|     Coverages | Declarations Page |
|     Limits of Insurance | Declarations Page |
|     Deductible | Declarations Page |
| PREAMBLE | 2 |
| AGREEMENT | 2 |
| DEFINITIONS | 2 |
| SECTION I - PROPERTY COVERAGES: | 7 |
|   A.  SECTION I - COVERAGES: | 7 |
|      1.  COVERAGE A - DWELLING: | 7 |
|      2.  COVERAGE B - OTHER STRUCTURES: | 8 |
|      3.  COVERAGE C - PERSONAL PROPERTY: | 8 |
|      4.  COVERAGE D - LOSS OF USE: | 11 |
|      5.  SECTION I - ADDITIONAL COVERAGES: | 12 |
|   B.  SECTION I - COVERED CAUSES OF LOSS: | 17 |
|   C.  SECTION I - EXCLUSIONS: | 17 |
|   D.  SECTION I - CONDITIONS: | 20 |
| SECTION II - LIABILITY COVERAGES: | 25 |
|   A.  SECTION II - COVERAGES: | 25 |
|      1.  COVERAGE E - PERSONAL LIABILITY | 25 |
|      2.  COVERAGE F - MEDICAL PAYMENTS TO OTHERS | 25 |
|   B.  SECTION II - EXCLUSIONS: | 26 |
|   C.  SECTION II - ADDITIONAL COVERAGES: | 32 |
|   D.  SECTION II - CONDITIONS: | 33 |
| SECTION III - COMMON CONDITIONS: | 35 |

The policy is a legal contract between the policy owner and the company.

**ENDORSEMENTS, if any, will be attached to this policy and follow the last page.**

EXECUTIVEKY (5/06)        Includes copyrighted material of ISO        **Page 1 of 38**
Properties, Inc., with its permission.

Case 3:08-cv-00267-HSM-HBG   Document 1-1   Filed 07/10/08   Page 9 of 52   PageID #: 12

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the person named in the Declarations as the Named Insured and their legally recognized spouse, if their spouse is domiciled in the "residence premises". The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under the definition of "insured". Refer to **DEFINITIONS**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **DEFINITIONS**.

## AGREEMENT

"We" will provide the insurance described in this policy. "You" agree to pay the premium and comply with all the provisions of this policy.

## DEFINITIONS

Where set forth in quotes in this policy, whether in singular or in plural, the following terms shall have the meanings indicated.

1. "Actual cash value" means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence.

2. "Aircraft" means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

3. "Bodily injury" means bodily harm, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Business" means:

   a. A trade, profession or occupation of any kind, including farming, engaged in on a full-time, part-time or occasional basis. Farming includes the growing or raising of produce, livestock or poultry for sale; or

   b. Any other activity engaged in for money or other compensation, except for the following:

      (1) One or more activities, not described in (2) through (5) below, for which no "insured" received more than $2,000 in total compensation for the 12 months before the current "coverage term";

      (2) Newspaper delivery, baby-sitting, caddying, lawn care and similar activities by a minor resident of "your" household;

      (3) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

      (4) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

      (5) The rendering of home day care services to a non-resident relative of an "insured".

5. "Coverage term" means the following individual increment, or if a multi-year Policy Period, increments, of time, which comprise the Policy Period, as stated in the Declarations, of this policy:

   a. The year commencing on the effective date, as stated in the Declarations (i.e., From), of this policy at 12:01 AM standard time at "your" mailing address shown in the Declarations, and if a multi-year Policy Period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at "your" mailing address shown in the Declarations on the earlier of:

      (1) The day the Policy Period shown in the Declarations ends; or

      (2) The day the policy is terminated or cancelled.

   b. However, if after the issuance of this policy, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

Includes copyrighted material of ISO
Properties, Inc., with its permission.
EXECUTIVEKY (5/06)                                                                              Page 2 of 38
Case 3:08-cv-00267-HSM-HBG   Document 1-1   Filed 07/10/08   Page 10 of 52   PageID #: 13

6.  "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from, computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

7.  "Employee" means an employee of an "insured" or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

8.  "Excluded watercraft" means:

    a.  A watercraft owned by or rented regularly or frequently to an "insured" if the watercraft has motor power of more than 75 "horsepower" or is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

    b.  A watercraft owned by or rented regularly or frequently to an "insured" if the watercraft is propelled by a jet drive, which forces water at a high pressure through a nozzle(s) at the stern of the craft, creating a water jet stream that drives the watercraft; or

    c.  Any watercraft:

        (1)  Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This provision of this Definition **8.c.(1)** does not apply to a sailing vessel or a predicted log cruise;

        (2)  Rented to others by an "insured";

        (3)  Used to carry persons or cargo for a charge; or

        (4)  Used for any "business" purpose.

9.  "Fuel system", means one or more containers, tanks or vessels which have a total combined capacity of 300 or more U.S. gallons of liquid fuel.

    However, a "fuel system" does not include any fuel tanks that are permanently affixed to a "motor vehicle" or watercraft owned by an "insured" and not used primarily for "business purposes".

10. "Fungi" means any type or form of fungus, and includes, but is not limited to, any form of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

11. "Horsepower" means the maximum power rating assigned to the engine or motor by the manufacturer.

12. "Hovercraft" means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

13. "Insured" means "you" and:

    a.  "Your" "resident relatives";

    b.  "Your" Living Trust(s) (also known as Inter Vivos Trusts) including any natural person named as executor, administrator or trustee of "your" estate or living trust, but:

        (1)  Only while acting within the scope of their duties as such; and

        (2)  Only with respect to property held in "your" living trust or estate:

            (a)  Which is specifically scheduled and insured in Section I of this policy; or

            (b)  For which insurance coverage is provided under Section II of this policy; and

    c.  Under Section II only:

        (1)  Any person or organization legally responsible for animals or watercraft that are covered by this policy and which are owned by "you" or a "resident relative". However, "insured" does not include persons or organizations using or having custody of these animals or watercraft:

            (a)  For "business" purposes; or

            (b)  Without permission of the owner; and

        (2)  With respect to the operation of a "motor vehicle" to which this policy applies:

Includes copyrighted material of ISO Properties, Inc. with its permission.

Case 3:08-cv-00267-HSM-HBG   Document 1-1   Filed 07/10/08   Page 11 of 52   PageID #: 14

      **(a)** Persons engaged in "your" or a "resident relative's" employ; and

      **(b)** Other persons using the vehicle on an "insured location" with "your" consent.

Under both Section I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**14.** "Insured location" means:

  **a.** The "residence premises";

  **b.** The part of other premises, other structures and grounds used by "you" as a residence and:

    **(1)** Which is shown in the Declarations; or

    **(2)** Which is acquired by "you" during the "coverage term" for "your" use as a residence. However, any such residence will cease to be an "insured location" under this policy upon the earlier of:

      **(a)** It being specifically insured under another policy form issued by "us" or another insurer; or

      **(b)** The end of the "coverage term" in which it was first acquired;

  **c.** Any premises used by "you" in connection with a premises described in **14.a.** or **14.b.** above;

  **d.** Any part of a premises:

    **(1)** Not owned by an "insured"; and

    **(2)** Where an "insured" is temporarily residing;

  **e.** Vacant land (other than farmland) owned by or rented to an "insured";

  **f.** Land owned or rented by "you" where a one or two family residence is being constructed for "your" occupancy;

  **g.** An "insured's" individual or family cemetery plots or burial vaults; or

  **h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

**15.** "Location" means:

  **a.** The "residence premises";

  **b.** Dwellings rented to others, which are specifically scheduled for coverage under this policy, including other structures and grounds that are part of that premises; and

  **c.** Secondary residences owned and occupied by "you", which are specifically scheduled for coverage under this policy, including other structures and grounds that are part of that premises.

**16.** "Motor vehicle" means:

  **a.** A self-propelled land or amphibious vehicle; or

  **b.** Any trailer or semi-trailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

**17.** "Nuclear hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion or smoke, whether those Causes of Loss are specifically named in or otherwise included within the Covered Causes of Loss.

**18.** "Occurrence" means:

  **a.** An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage"; or

  **b.** An offense that results in "personal injury".

All damages arising from the same accident, continuous or repeated exposure to substantially the same general conditions, act or offense shall be deemed to arise from one "occurrence" regardless of:

    **(1)** The frequency of repetition;

(2) The number or kind of media used; or

(3) The number of claimants.

19. "Personal injury" means injury arising out of one or more of the following offenses:

   a. Defamation of character, including oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. False arrest, detention or imprisonment;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Malicious prosecution; or

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy.

20. "Physical loss" means accidental physical loss or accidental physical damage.

21. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum products and their by-products and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized by industry or government to be harmful or toxic to persons, property or the environment

22. "Property damage" means physical injury to or destruction of tangible property, including loss of use of this property. For the purposes of this insurance, "electronic data" is not tangible property.

23. "Residence employee" means:

   a. An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

   b. One who performs similar duties elsewhere for an "insured" not related to the "business" of an "insured".

   However, a "residence employee" does not include:

   (1) A temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions; or

   (2) An employee that comes within the scope of a workers' compensation statute.

24. "Residence premises" means:

   a. The one or two family dwelling where "you" reside; or

   b. That part of any other building where "you" reside;

   Including other structures and grounds at that location, and which is shown as the "residence premises" in the Declarations.

25. "Resident relative" means:

   a. A person related to "you" by blood, marriage or adoption that is a resident of "your" household and who is domiciled in the "residence premises";

   b. Anyone else in "your" or a "resident relative's" (Per a. above) care who is a resident of "your" household and who is domiciled in the "residence premises"; and

   c. A student enrolled in school full-time, as defined by the school, who met the definition of "resident relative" as provided in a. or b. above before moving out of "your" household to attend school, provided the student is under the age of twenty-four.

26. "Service agreement" means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

Includes copyrighted material of ISO
EXECUTIVEKY (5/06)          Properties, Inc., with its permission.          Page 5 of 38
Case 3:08-cv-00267-HSM-HBG   Document 1-1   Filed 07/10/08   Page 13 of 52   PageID #: 16

27. "Specified causes of loss" means:

    **a.** Fire or lightning.

    **b.** Windstorm or hail.

        **(1)** This Cause of Loss does not include "physical loss" to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

        **(2)** This Cause of Loss includes "physical loss" to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors only while inside a fully enclosed building.

    **c.** Explosion.

    **d.** Riot or civil commotion.

    **e.** Aircraft, including self-propelled missiles and spacecraft.

    **f.** Vehicles.

    **g.** Smoke, meaning sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

    This Cause of Loss does not include "physical loss" caused by smoke or soot from agricultural smudging, industrial operations, candles, incense or oil lamps.

    **h.** Vandalism and malicious mischief.

    **i.** Theft, including attempted theft and disappearance of property from a known location when it is likely that the property has been stolen.

        **(1)** This Cause of Loss does not include "physical loss" by theft:

            **(a)** Committed by an "insured";

            **(b)** In or from a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

            **(c)** From any part of a "residence premises" rented by an "insured" to someone other than another "insured".

        **(2)** This Cause of Loss does not include "physical loss" caused by theft that occurs off the "residence premises" of:

            **(a)** Property while at any other residence owned, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the "physical loss";

            **(b)** Watercraft of all types and their furnishings, equipment and outboard engines or motors; or

            **(c)** Trailers, semi-trailers and campers;

    **j.** Falling objects.

    This Cause of Loss does not include "physical loss" to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

    **k.** Weight of ice, snow or sleet which causes "physical loss" to property contained in a building.

    **l.** Accidental discharge or overflow of water or steam from within a plumbing, heating or air conditioning or automatic fire protective sprinkler system or from within a household appliance.

    This Cause of Loss does not include "physical loss":

        **(1)** To the system or appliance from which water or steam escaped;

        **(2)** Caused by or resulting from freezing except as provided in the Cause of Loss freezing below;

Includes copyrighted material of ISO
EXECUTIVEKY (5/06)        Properties, Inc., with its permission.        **Page 6 of 38**
Case 3:08-cv-00267-HSM-HBG  Document 1-1  Filed 07/10/08  Page 14 of 52  PageID #: 17

    (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

    (4) Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

For the purposes of this Cause of Loss, a plumbing system or household appliance does not include a sump, sump pump or related equipment, or a roof drain, gutter, downspout or similar fixtures or equipment.

Section **I, C., 4.,** Exclusion **c.** Water Damage, Paragraphs **(1)** and **(3)** that apply to surface water and water below the surface of the ground do not apply to "physical loss" by water covered under this Cause of Loss I.

**m.** Sudden and accidental tearing apart, cracking, burning or bulging of a steam or water heating system, an air conditioning or automatic fire protective sprinkler system or an appliance for heating water.

"We" do not cover "physical loss" caused by or resulting from freezing under this Cause of Loss.

**n.** Freezing of a plumbing, heating, air conditioning system or automatic fire protective sprinkler system or of a household appliance but only if "you" have used reasonable care to:

    **(1)** Maintain heat in the building; or

    **(2)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, "you" must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this Cause of Loss, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**o.** Sudden and accidental damage from artificially generated electrical current.

This Cause of Loss does not include "physical loss" to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

**p.** Volcanic Eruption other than "physical loss" caused by earthquake, land shock waves or tremors.

**28.** "Suit" means a civil proceeding in which money damages because of "bodily injury", "personal injury", "property damage", unauthorized use of a credit card or fund transfer card, or account forgery to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such money damages are claimed and to which the "insured" must submit or does submit with "our" consent;

**b.** Any other alternative dispute resolution proceeding in which such money damages are claimed and to which the "insured" submits with "our" consent; or

**c.** An appeal of a civil proceeding.

**29.** "Workplace" means that place and during such hours to which the fellow employee of an "insured" is assigned to work on the date of "occurrence".

## SECTION I - PROPERTY COVERAGES

### A. SECTION I - COVERAGES

#### 1. COVERAGE A - DWELLING

"We" will pay for direct "physical loss" to Covered Property and other covered costs caused by or resulting from a Covered Cause of Loss that occurs during the "coverage term".

Includes copyrighted material of ISO
Properties, Inc., with its permission.
EXECUTIVEKY (5/06)    Page 7 of 38

Case 3:08-cv-00267-HSM-HBG   Document 1-1   Filed 07/10/08   Page 15 of 52   PageID #: 18

a. **Covered Property**

Covered Property under Coverage **A** - Dwelling means:

(1) The dwelling on the "residence premises", including structures attached to the dwelling; and

(2) Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

b. **Property Not Covered**

Covered Property under Coverage **A** - Dwelling does not include land, including land on which the dwelling is located.

2. **COVERAGE B - OTHER STRUCTURES**

"We" will pay for direct "physical loss" to Covered Property and other covered costs caused by or resulting from a Covered Cause of Loss that occurs during the "coverage term".

a. **Covered Property**

Covered Property under Coverage **B** - Other Structures means other structures on the "residence premises" set apart from the dwelling insured under Coverage **A** by clear space. This includes structures connected to the dwelling insured under Coverage **A** by only a fence, utility line, or similar connection.

b. **Property Not Covered**

Covered Property under Coverage **B** - Other Structures does not include:

(1) Land, including land on which the other structures are located.

(2) Grave markers, including mausoleums, except to the extent they are covered under Section I, **A., 5.** Additional Coverage I. Grave Markers.

(3) Other structures:

(a) From which any "business" is conducted;

(b) Rented or held for rental to any person who is not both a tenant of and domiciled in, the dwelling insured under Coverage **A**, unless used solely as a private garage; or

(c) Used to store "business" property. However, "we" do cover a structure that contains "business" property solely owned by:

1) An "insured"; or

2) A person who is a tenant of, and who is domiciled in the dwelling insured under Coverage **A**,

Provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. **COVERAGE C - PERSONAL PROPERTY**

"We" will pay for direct "physical loss" to Covered Property and other covered costs caused by or resulting from a Covered Cause of Loss that occurs during the "coverage term".

a. **Covered Property**

Covered Property under Coverage **C** - Personal Property means:

(1) Personal property owned or used by an "insured" while it is anywhere in the world; and

(2) After a "physical loss" and at "your" request, personal property owned by:

(a) Others while the property is on the part of the "residence premises" occupied by an "insured"; or

(b) A guest or "residence employee", while the property is in any residence occupied by an "insured".

Includes copyrighted material of ISO
**EXECUTIVEKY (5/06)**          Properties, Inc., with its permission.          **Page 8 of 38**
Case 3:08-cv-00267-HSM-HBG   Document 1-1   Filed 07/10/08   Page 16 of 52   PageID #: 19

**b. Property Not Covered**

Covered Property under Coverage **C** - Personal Property does not include:

**(1)** Property separately described and specifically insured, regardless of the amount for which it is insured, or the deductible that applies, in this or any other insurance.

**(2)** "Motor vehicles" or their component parts, including those being assembled, constructed or reconstructed. This includes:

    **(a)** Their accessories, equipment or parts; or

    **(b)** Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle".

    Accessories include:

    Antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Item **(2)(b)**.

    The exclusion of property described in **(2)(a)** and **(2)(b)** above applies only while the property is in or upon the "motor vehicle" and does not apply to mobile or cellular phones which are covered on an excess basis over any other valid and collectible insurance.

    "We" do cover "motor vehicles" not required to be registered for use on public roads or property which are:

    **1)** Used to service an "insured's" residence;

    **2)** Designed to assist the handicapped; or

    **3)** Golf carts.

**(3)** "Aircraft" and parts.

**(4)** These specific types of property:

    **(a)** Personal property:

    **1)** Of roomers or boarders not related to an "insured";

    **2)** Of tenants; and

    **3)** Property rented or held for rental to others by an "insured" while being used away from the "residence premises".

    **(b)** Property used in a "business", including:

    **1)** Books of account, drawings or other paper records; or

    **2)** Computers, related equipment and "electronic data",

    except as provided in Section **I, A., 5.** Additional Coverage **n.** Business Property.

    However, "we" do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market.

**(5)** Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in Section **I, A., 5.** Additional Coverage **i.** Landlord's Furnishings.

**(6)** Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds, except as provided in Section **I, A., 5.** Additional Coverage **e.** Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money.

**(7)** "Hovercraft" and parts.

**(8)** Outdoor trees, shrubs, plants or lawns, except to the extent they are covered under Section **I, A., 5.** Additional Coverage **b.** Trees, Shrubs and Other Plants.

Includes copyrighted material of ISO
Properties, Inc., with its permission.
Page 9 of 38

EXECUTIVEKY (5/06)

Case 3:08-cv-00267-HSM-HBG   Document 1-1   Filed 07/10/08   Page 17 of 52   PageID #: 20

**(9)** Grave markers, including mausoleums, except to the extent they are covered under Section **I, A., 5.** Additional Coverage I. Grave Markers.

**c. Limitations**

The limits of insurance referenced below do not increase the Coverage **C** - Personal Property Limit of Insurance. Rather, the limits of insurance described below apply as a maximum Limit of Insurance for all property of the specific type described, which is involved in a single "physical loss".

**(1)** The following types of property are covered only up to the limit of insurance referenced:

    **(a)** Coverage for personal property usually situated at an "insured's" residence not listed in the Declarations or elsewhere in this policy, other than the "residence premises", is $1,000. However, this limitation does not apply to personal property:

        **1)** Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in;

        **2)** In a newly acquired principal residence for 30 days immediately after "you" begin to move the property there; or

        **3)** Owned by or used by a student, as provided in Paragraph **c.** of the definition of "resident relative".

    **(b)** $1,000 on money, food stamps, bank notes, bullion, gold or silver (other than goldware or silverware), platinum (other than platinumware), coins, medals, scrip, stored value cards and smart cards.

    **(c)** $5,000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, personal records, tickets, passports, manuscripts and stamps (except food stamps). This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists and includes the cost to research, replace or restore the information from the lost or damaged material.

    **(d)** $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

    **(e)** $1,500 on trailers or semi-trailers not used with watercraft of all types.

    **(f)** $1,000 on trading cards ($250 maximum per card).

    **(g)** $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

    Accessories include:

    Antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Item **(g).**

**(2)** For "physical loss" by theft, misplacing or losing the following types of property are covered only up to the limit of insurance referenced:

    **(a)** $1,500 for jewelry, watches, precious and semiprecious stones, and furs.

    **(b)** $5,000 for silverware, goldware, pewterware, silver-plated ware, gold-plated ware, platinumware and platinum-plated ware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold, or pewter.

    **(c)** $2,500 for firearms and related equipment.

**(3)** Animals, birds and fish are:

    **(a)** Covered only for the following Causes of Loss:

        **1)** Fire;

        **2)** Lightning;

        **3)** Windstorm;

Includes copyrighted material of ISO

EXECUTIVE (5/06) Properties, Inc., with its permission. Page 10 of 38

Case 5:08-cv-00267-HSM-HBG   Document 1-1   Filed 07/10/08   Page 18 of 52   PageID #: 21

            **4)**  Hail;

            **5)**  Smoke;

            **6)**  Explosion;

            **7)**  Riot; or

            **8)**  Falling object; and

       **(b)**  Only covered up to a limit of $150 in total.

    **(4)**  Breakage of eyeglasses, glassware, statuary, marble, bric-a-brac, porcelains and similar fragile articles, other than jewelry, watches, bronzes, cameras and photographic lenses, is covered only if caused by one or more of the following Causes of Loss:

       **(a)**  Fire;

       **(b)**  Lightning;

       **(c)**  Windstorm;

       **(d)**  Hail;

       **(e)**  Smoke (other than smoke from agricultural smudging or industrial operations);

       **(f)**  Explosion;

       **(g)**  Riot;

       **(h)**  Civil commotion;

       **(i)**  Aircraft;

       **(j)**  Vehicles;

       **(k)**  Vandalism and malicious mischief;

       **(l)**  Collapse of a building, or any part of a building;

       **(m)** Earthquake;

       **(n)**  Water, not otherwise excluded;

       **(o)**  Theft or attempted theft; or

       **(p)**  Sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, air conditioning system or an appliance for heating water.

## 4.  COVERAGE D - LOSS OF USE

Coverage **D** - Loss of Use benefits are limited to the total of all of the following:

### a.  Additional Living Expense

If a covered "physical loss" under Section I makes the "residence premises" uninhabitable, "we" pay for necessary increases in living expenses incurred so that "your" household can maintain its normal standard of living. Payment shall be for the shortest time period required to repair or replace the premises or, if "you" choose, permanently relocate "your" household.

### b.  Fair Rental Value

If a covered "physical loss" under Section I makes that part of the "residence premises" rented to others or held for rental by "you" uninhabitable, "we" will pay "you" its fair rental value for the shortest time period required to repair or replace that part of the premises. Fair rental value will not include any expense that does not continue while that part of the "residence premises" is uninhabitable.

### c.  Prohibited Use

If a civil authority prohibits use of "your" "residence premises", as a result of direct "physical loss" to a neighboring premises by a Covered Cause of Loss in this policy, "we" will pay "you"

Includes copyrighted material of ISO
Properties, Inc., with its permission.

for any Additional Living Expense and Fair Rental Value loss of income for a period of time not exceeding two weeks.

The periods of time referred to above are not limited by expiration of this policy.

"We" do not cover loss of income or expense due to cancellation of a lease or agreement.

5. **SECTION I - ADDITIONAL COVERAGES**

The limits of insurance applicable to the Section I - Additional Coverages are: **1.)** In addition to the Limits of Insurance stated in the Declarations, unless stated otherwise; and **2.)** Only applicable to "physical loss" or costs that arise from a Covered Cause of Loss that occurs during the "coverage term".

a. **Debris Removal**

(1) "We" will pay "your" reasonable expense to remove:

(a) Debris of Covered Property if a Covered Cause of Loss causes the "physical loss"; or

(b) Ash, dust or particles from a volcanic eruption that has caused direct "physical loss" to a building or property contained in a building, which is Covered Property.

This expense is included in the limit of insurance that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of insurance for the damaged property, an additional 5% of that limit of insurance is available for debris removal expense.

(2) "We" will also pay "your" reasonable expense, up to $1,000, for the removal from the "residence premises" of:

(a) "Your" tree(s) felled by the Causes of Loss of:

1) Windstorm;

2) Hail; or

3) Weight of Ice, Snow or Sleet; or

(b) A neighbor's tree(s) felled by a covered Cause of Loss under Coverage **C**, provided the tree(s):

1) Damages a covered structure; or

2) Does not damage a covered structure, but:

a) Blocks a driveway on the "residence premises" which prevents a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises", or

b) Blocks a ramp or other fixtures designed to assist a handicapped person to enter or leave the dwelling on the "residence premises".

The $1,000 limit stated in Section **I, A.5.a.(2)** is the most "we" will pay in any one "physical loss" regardless of the number of fallen trees, or to whom they belong. No more than $500 of this limit will be paid for the removal of any one tree.

b. **Trees, Shrubs and Other Plants**

(1) "We" will pay for "physical loss" to outdoor trees, shrubs, plants or lawns, on the "residence premises" caused by the following Causes of Loss:

(a) Fire or lightning;

(b) Explosion;

(c) Riot or civil commotion;

(d) Aircraft;

(e) Vehicles not owned or operated by an "insured";

Includes copyrighted material of ISO
Properties, Inc., with its permission.
EXECUTIVELY (5/06)
Page 12 of 38

    **(f)** Vandalism and malicious mischief; or

    **(g)** Theft.

**(2)** The most "we" will pay is 5% of the Coverage **A** Limit of Insurance stated in the Declarations for all outdoor trees, shrubs, plants and lawns, including the removal of the debris thereof, but not more than $500 for any one tree, shrub or plant.

"We" will not pay for property grown for "business" purposes.

**c. Fire Department Service Charge**

"We" will pay up to $1,000 for "your" liability assumed prior to the "physical loss" by contract or agreement for fire department charges incurred when the fire department is called to save or protect Covered Property from a Covered Cause of Loss. "We" do not cover fire department service charges if the property is located within the limits of the city, municipality, or protection district furnishing the fire department response. No deductible applies to this coverage. We do not cover fire department services charges if you do not have a contract or agreement with the fire department furnishing the response.

**d. Property Removed**

If "you" remove Covered Property from "your" premises because a Covered Cause of Loss endangers it, the Covered Property is covered for 30 days against all forms of direct "physical loss". This coverage does not change the limit of insurance that applies to Covered Property being removed.

**e. Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money**

**(1)** "We" will pay up to $1,000 for:

    **(a)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

    **(b)** Loss of funds resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

    **(c)** Loss of funds suffered by an "insured" caused by forgery or alteration of any check or negotiable instrument made or drawn upon the "insured's" account; and

    **(d)** Loss of funds suffered by an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

**(2)** "We" do not cover use of a credit card, electronic fund transfer card or access device:

    **(a)** By a resident of "your" household;

    **(b)** By a person who has been entrusted with either type of card or access device; or

    **(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed.

**(3)** All loss of funds resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss of funds.

**(4)** "We" do not cover loss of funds arising out of any "business" use or dishonesty of an "insured".

**(5)** No deductible applies to this coverage.

**(6)** Defense:

    **(a)** "We" may investigate and settle any claim or "suit" that "we" decide is appropriate;

    **(b)** If a "suit" is brought against an "insured" for liability under the Credit Card, Electronic Fund Transfer Card or Access Device coverage, "we" will provide a defense at "our" expense by counsel of "our" choice; and

Includes copyrighted material of ISO
Properties, Inc., with its permission.
Page 13 of 38

EXECUTIVE K (5/06)

**(c)** "We" have the option to defend at "our" expense an "insured" or an "insured's" bank against any "suit" for the enforcement of payment under the Forgery Coverage.

"Our" duty to defend a claim or "suit" ends when the amount "we" pay for the loss of funds equals the limit of insurance stated in Section **I, A., 5., e. (1)** above.

**f. Assessments**

**(1)** "We" will pay up to $1,000 for "your" share of any assessment charged during the "coverage term" against "you" by a corporation or association of property owners to which "you" belong. The assessment must be made as a result of a direct "physical loss" which occurs during the "coverage term" to the property owned by all members collectively, of the type that would be covered by this policy if owned by "you", caused by a Covered Cause of Loss under Section **I** - Coverage **A** - Dwelling, other than:

    **(a)** Earthquake; or

    **(b)** Land shock waves or tremors before, during or after a volcanic eruption.

**(2)** This coverage applies only to assessments charged against "you" as owner or tenant of the "residence premises".

**(3)** "We" do not cover assessments charged against "you" or a corporation or association of property owners by any governmental body.

**(4)** The limit of $1,000 is the most "we" will pay with respect to any one "physical loss", regardless of the number of assessments. "We" will only apply one deductible, per unit, to the total amount of any one "physical loss" to the property described above, regardless of the number of assessments.

**g. Collapse**

**(1)** "We" insure for direct "physical loss" to Covered Property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

    **(a)** The "specified causes of loss";

    **(b)** Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

    **(c)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

    **(d)** Weight of contents, equipment, animals or people;

    **(e)** Weight of rain which collects on a roof; or

    **(f)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

"Physical loss" to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf, or dock is not included under items **(b), (c), (d), (e)** and **(f)** unless the "physical loss" is a direct result of the collapse of a building or any part of a building.

This coverage does not increase the Limit of Insurance applying to the damaged Covered Property.

**(2)** With respect to buildings:

    **(a)** Collapse means an abrupt falling down or caving in of a building or any part of a building;

    **(b)** A building or any part of a building in imminent danger of collapse is not considered to be in a state of collapse;

    **(c)** A building standing or any part of a building standing is not considered to be in state of collapse even if it:

        **1)** Has separated from another part of a building; or

Includes copyrighted material of ISO Properties, Inc. with its permission

> **2)** Shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expanding.

**h. Glass or Safety Glazing Material**

**(1)** "We" cover:

    **(a)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

    **(b)** The breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a covered building, storm door or storm window; and

    **(c)** The direct "physical loss" to Covered Property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

**(2)** This coverage does not include "physical loss":

    **(a)** To Covered Property which results because the glass or safety glazing material has been broken, except as provided in **(1)(c)** above; or

    **(b)** On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the "physical loss", except when the breakage results from Earth Movement as provided for in **(1)(b)** above. A dwelling being constructed is not considered vacant.

This coverage does not increase the limit of insurance that applies to the damaged property.

**i. Landlord's Furnishings**

**(1)** "We" will pay up to $2,500 for "your" appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for "physical loss" caused by the "specified causes of loss", other than theft.

**(2)** The limit of insurance referenced in **i.(1)** above is the most "we" will pay in any one "physical loss" regardless of the number of appliances, carpeting or other household furnishings involved in the "physical loss".

**(3)** This coverage does not increase the limit of insurance applying to the damaged property.

**j. Arson Reward**

"We" will provide a $1,000 reward for information leading to the arrest and conviction of person(s) responsible for a covered arson "physical loss".

**k. Ordinance or Law**

**(1)** "You" may use up to 10% of the Limit of Insurance stated in the Declarations that applies to Section I - Coverage **A** for the increased costs "you" incur due to the enforcement of any ordinance or law which requires or regulates:

    **(a)** The construction, demolition, remodeling, renovation or repair of that portion of a covered building or other structure damaged by a Covered Cause of Loss;

    **(b)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Covered Cause of Loss to another part of that covered building or other structure; or

    **(c)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Covered Cause of Loss.

**(2)** "You" may use all or part of this ordinance or law coverage to pay for the increased costs "you" incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **(1)** above.

Includes copyrighted material of ISO Properties, Inc. with its permission.

(3) "We" do not cover:

    (a) The reduction in value to any covered building or other structure due to the require-ments of any ordinance or law; or

    (b) The costs to comply with any ordinance or law which requires an "insured" or others, to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants" in or on any covered building or other structure.

(4) This coverage does not increase the limit of insurance applying to the damaged property.

**l.  Grave Markers**

"We" will pay up to $5,000 for grave markers, including mausoleums, on or away from the "resi-dence premises" in which an "insured" has an insurable interest, but only to the extent of that interest, for "physical loss" caused by a Covered Cause of Loss under Section I - Coverage **C.**

This coverage does not increase the limits of insurance that apply to the damaged Covered Property.

**m.  Fungi, Wet or Dry Rot, or Bacteria**

(1) The amount shown in the Section I - Fungi, Wet or Dry Rot, or Bacteria - Limit of Insurance Schedule is the most "we" will pay at each "location" under this Additional Coverage during the "coverage term" for:

    (a) The total of all "physical loss" payable under Section I - Property Coverages caused by "fungi", wet or dry rot, or bacteria;

    (b) The cost to remove "fungi", wet or dry rot, or bacteria from Covered Property under Section I - Property Coverages;

    (c) The cost to tear out and replace any part of the building or other Covered Property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

    (d) The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

(2) The coverage described in Section I, A., 5., m., (1) above only applies when such "physical loss" or costs are a result of a Covered Cause of Loss that occurs during the "coverage term" and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Covered Cause of Loss occurred.

(3) If there is covered "physical loss" to Covered Property, not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, payment for "physical loss" will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the "physical loss". Any such increase in the "physical loss" will be subject to the terms of this Additional Coverage.

This coverage does not increase the limit of insurance applying to the damaged covered prop-erty.

**n.  Business Property**

"We" will pay up to $2,500 on property used for "business" purposes on or away from the "resi-dence premises" for "physical loss" caused by a Covered Cause of Loss under Section I - Cov-erage **C.**

This coverage does not increase the limits of insurance that apply to the damaged Covered Property.

**o.  Earthquake**

(1) "We" insure for direct "physical loss" to Covered Property under Section I caused by earth-quake including land shock waves or tremors before, during or after a volcanic eruption.

Includes copyrighted material of ISO
Properties, Inc. with its permission

Case 3:08-cv-00267-HSM-HBG   Document 1-1   Filed 07/10/08   Page 24 of 52   PageID #: 27

**(2)** "We" do not cover "physical loss" resulting directly or indirectly from flood of any nature or tidal wave, whether caused by, resulting from, contributed to or aggravated by earthquake.

This coverage does not increase the limits of insurance that apply to the damaged Covered Property and does not include the cost of filling land.

## B. SECTION I - COVERED CAUSES OF LOSS

### Coverage A - Dwelling, Coverage B - Other Structures and Coverage C - Personal Property

The following Covered Causes of Loss apply to Covered Property under Coverage **A** - Dwelling, Coverage **B** - Other Structures and Coverage **C** - Personal Property:

"We" insure direct "physical loss" unless the "physical loss" is:

**1.** Excluded in Section **I** - Property Coverages, **C.** Exclusions; or

**2.** Limited in Section **I, A., 3.c.** Limitations.

## C. SECTION I - EXCLUSIONS

### Exclusions Applicable to Coverage A - Dwelling, Coverage B - Other Structures and Coverage C - Personal Property

The following exclusions apply to Coverage **A** - Dwelling, Coverage **B** - Other Structures and Coverage **C** - Personal Property:

**1.** "We" do not insure "physical loss" caused by:

**a.** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing.

This provision does not apply if "you" have used reasonable care to:

**(1)** Maintain heat in the building; or

**(2)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, "you" must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**b.** Freezing, thawing, pressure or weight of water, snow or ice, whether driven by wind or not, to a:

**(1)** Fence, pavement, patio, deck, swimming pool, hot-tub, spa or whirlpool;

**(2)** Footing, foundation, bulkhead, wall, or any other structure or device, that supports all or part of a building or other structure;

**(3)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

**(4)** Pier, wharf or dock.

**c.** Vandalism and malicious mischief or breakage of glass and safety glazing materials, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the "physical loss". A dwelling being constructed is not considered vacant. This exclusion **c.** only applies to Coverages **A** and **B**.

**d.** Any of the following:

**(1)** Wear and tear, marring, deterioration;

**(2)** Mechanical break down, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

Includes copyrighted material of ISO
Properties, Inc. with its permission.
EXECUTIVEKY (5/06)
Page 17 of 38

(3) Smog, rust, or other corrosion;

(4) Smoke or soot from:

    (a) Agricultural smudging;

    (b) Industrial operations;

    (c) Candles;

    (d) Incense; or

    (e) Oil lamps;

(5) Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by one or more of the "specified causes of loss";

(6) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

(7) Birds, vermin, rodents or insects; or

(8) Animals owned or kept by an "insured".

**Exception to 1.d.**

Unless the "physical loss" is otherwise excluded, "we" cover "physical loss" to Covered Property under Section I - Coverages **A**, **B** or **C** resulting from an accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of the building or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual "physical loss" to a building on the "residence premises".

"We" do not cover "physical loss" to the system or appliance from which the water or steam escaped.

For the purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment; or a roof drain, gutter, down spout or similar fixtures or equipment.

Section I, **C.**, **4.**, Exclusion **c.** Water Damage, Paragraphs **(1)** and **(3)** that apply to surface water and water below the surface of the ground do not apply to "physical loss" by water covered under the exception to **1.d.**

e. Weather conditions. However, this exclusion only applies:

(1) If weather conditions contribute in any way with a cause or event excluded under Section I, **C.** Section I - Exclusions, Paragraph **4.** below to produce the "physical loss"; and

(2) To Coverages **A** and **B**.

f. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body. This Exclusion **f.** applies only to Coverages **A** and **B**.

g. Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property whether on or off the "residence premises".

This Exclusion **g.** applies only to Coverages **A** and **B**.

Includes copyrighted material of ISO Properties, Inc. with its permission.

    h. Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

2. The following exclusions apply to Coverage **C** only.

    "We" do not insure "physical loss" caused by:

    **a.** Dampness of atmosphere or extremes of temperature unless the direct cause of loss is rain, snow, sleet or hail.

    **b.** Refinishing, renovating or repairing property other than watches, jewelry or furs.

    **c.** Collision (other than collision with a land vehicle), sinking, swamping or stranding of watercraft, including their trailers, furnishings, equipment and outboard motors.

3. Under Section I, **C.** Section I - Exclusions, Paragraphs **1.** and **2.**, any ensuing "physical loss" to Covered Property in Section I - Coverages **A, B** and **C** not precluded by any other provision in this policy is covered.

4. "We" will not pay for "physical loss" resulting directly or indirectly by any of the following. Such "physical loss" is excluded regardless of any other cause or event contributing concurrently or in any sequence to the "physical loss". These exclusions apply whether or not the "physical loss" event results in widespread damage or affects a substantial area.

    **a.** Ordinance or Law, meaning any ordinance or law:

        **(1)** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **4.a.(1)** does not apply to the amount of coverage that may be provided under Section I, **A., 5.** Additional Coverage **k.** Ordinance or Law;

        **(2)** The requirements of which result in a reduction in value to property; or

        **(3)** Requiring an "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

    **b.** Earth Movement, meaning:

        **(1)** Earthquake including land shock waves or tremors before during or after a volcanic eruption;

        **(2)** Landslide, mudslide or mudflow;

        **(3)** Subsidence or sinkhole; or

        **(4)** Any other earth movement including earth sinking, rising or shifting;

    Unless direct "physical loss" by fire, explosion or breakage of glass or safety glass ensues and then "we" will pay only for the ensuing "physical loss".

    This exclusion does not apply:

        **(a)** To "physical loss" by theft; or

        **(b)** To the extent that coverage is provided under Section I, **A. 5.** Additional Coverage **o.** Earthquake.

    **c.** Water Damage, meaning:

        **(1)** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

        **(2)** Water or waterborne material which backs up through sewers or drains, or which overflows or is discharged from a sump, sump pump or related equipment; or

        **(3)** Water or waterborne material below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct "physical loss" by fire, explosion or theft resulting from water damage is covered.

d. Utility Failure, meaning the interruption of power or other utility service if the interruption takes place away from the "residence premises". But if the failure of power or other utility service results in a "physical loss" from a Covered Cause of Loss on the "residence premises", "we" will pay only for "physical loss" caused by that Covered Cause of Loss.

e. Neglect, meaning neglect of an "insured" to use all reasonable means to save and preserve Covered Property at and after the time of a "physical loss", or when Covered Property is endangered by a Covered Cause of Loss.

f. War, including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion, revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

g. "Nuclear hazard".

h. Intentional damage, meaning any damage arising out of any act an "insured" commits or conspires to commit with the intent to cause damage.

In the event of such damage, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the damage.

However, this exclusion will not apply to deny payment to an innocent co-"insured" who did not cooperate in or contribute to the creation of the loss if:

(1) Such loss arose out of a pattern of criminal domestic violence and abuse: and

(2) The perpetrator of the loss is criminally prosecuted for the act causing the loss.

If we pay a claim pursuant to this exception, our payment to the "insured" is limited to that "insured's" insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more that the Limit of Liability.

i. Governmental Action, meaning the destruction, confiscation or seizure of Covered Property in Section I - Coverage A, B or C by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the "physical loss" caused by fire would be covered under this policy.

j. "Fungi", wet or dry rot, or bacteria meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This exclusion does not apply:

(1) When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

(2) To the extent coverage is provided for in Section I, A., 5. Section I - Additional Coverage m. Fungi, Wet or Dry Rot, or Bacteria with respect to "physical loss" caused by a Covered Cause of Loss other than fire or lightning.

Direct loss by a Covered Cause of Loss resulting from "fungi", wet or dry rot, or bacteria is covered.

k. Collapse, other than as provided for in Section I, A., 5. Additional Coverage g. Collapse.

## D. SECTION I - CONDITIONS

### 1. Insurable Interest and Limit of Insurance

Even if more than one person has an insurable interest in the Covered Property, "we" will not be liable in any one "physical loss":

a. To an "insured" for more than the amount of such "insured's" interest at the time of "physical loss"; or

Includes copyrighted material of ISO
Properties, Inc. with its permission.

    **b.** For more than the applicable Limit of Insurance:

        **(1)** Stated in the Declarations;

        **(2)** Stated in an endorsement attached to this policy; or

        **(3)** As provided in Section **I, A., 5.** Section **I** - Additional Coverages.

## 2. Your Duties After Loss

In case of a "physical loss" to Covered Property, "we" have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to "us". These duties must be performed either by "you", or "your" representative, or by an "insured" seeking coverage, if not "you".

    **a.** Give immediate notice to "us" or "our" agent;

    **b.** Notify the police in case of "physical loss" by theft;

    **c.** Notify the credit card, electronic fund transfer card or access device company in case of loss of funds under the Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money coverage;

    **d.** Protect the Covered Property from further damage. If repairs to the Covered Property are required, "you" must:

        **(1)** Make reasonable and necessary repairs to protect the Covered Property; and

        **(2)** Keep an accurate record of repair expenses;

    **e.** Cooperate with "us" in the investigation of a claim;

    **f.** Prepare an inventory of damaged personal property showing the quantity, description, "actual cash value" and amount of "physical loss" and attach all bills, receipts and related documents that justify the figures in the inventory;

    **g.** As often as "we" reasonably require:

        **(1)** Exhibit the damaged property;

        **(2)** Provide "us" with records and documents "we" request and permit "us" to make copies; and

        **(3)** Submit to examination under oath, while not in the presence of another "insured", and sign the same;

    **h.** Submit to "us", within 60 days after "we" request, "your" signed, sworn proof of "physical loss" which sets forth, to the best of "your" knowledge and belief:

        **(1)** The time and cause of "physical loss";

        **(2)** The interests of all "insureds" and all others in the property involved and all liens on the property;

        **(3)** Other insurance which may cover the "physical loss";

        **(4)** Changes in title or occupancy of the property during the "coverage term";

        **(5)** Specifications of any damaged building and detailed estimates for repair of the damage;

        **(6)** An inventory of damaged personal property described in **2.f.** above;

        **(7)** Receipts for additional living expenses incurred and records supporting the fair rental value loss of income; or

        **(8)** Evidence or affidavit supporting a claim under the Credit Card, Electronic Fund Transfer Card, or Access Device, Forgery and Counterfeit Money coverage, stating the amount and cause of the loss of funds.

## 3. Loss Settlement

In this Condition **3.**, the terms 'cost to repair or replace' and 'replacement cost', do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent

that coverage for these increased costs is provided in Section I, **A.**, **5.** Additional Coverage **k.** Ordinance or Law. Covered property losses are settled as follows:

**a.** Property of the following types:

    **(1)** Personal property; and

    **(2)** Grave markers, including mausoleums;

at "actual cash value" at the time of the "physical loss" but not more than the amount required to repair or replace.

**b.** All Covered Property under Section I - Coverage **A** or **B**, not otherwise referenced in Paragraph **3.a.** above, at replacement cost without deduction for depreciation, subject to the following:

    **(1)** If, at the time of "physical loss", the amount of insurance in this policy on the damaged Covered Property is 80% or more of the full replacement cost of the Covered Property immediately before the "physical loss", "we" will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

        **(a)** The Limit of Insurance under this policy that applies to the Covered Property;

        **(b)** The replacement cost of that part of the Covered Property damaged with material of like kind and quality and for like use; or

        **(c)** The necessary amount actually spent to repair or replace the damaged Covered Property.

    If the Covered Property is rebuilt at a new premises the cost described in **3.b.(1)(b)** is limited to the cost which would have been incurred if the Covered Property had been rebuilt at the original premises.

    **(2)** If, at the time of "physical loss", the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the "physical loss", "we" will pay the greater of the following amounts, but not more than the Limit of Insurance under this policy that applies to the building:

        **(a)** The "actual cash value" of that part of the building damaged; or

        **(b)** That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

    **(3)** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the "physical loss", do not include the value of:

        **(a)** Excavations, footings, foundations, piers or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

        **(b)** Those supports in **(a)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

        **(c)** Underground flues, pipes, wiring and drains.

    **(4)** "We" will pay no more than the "actual cash value" of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, "we" will settle the "physical loss" according to the provisions of **b.(1)** and **b.(2)** above.

    However, if the cost to repair or replace the damage is both:

        **(a)** Less than 5% of the Limit of Insurance in this policy on the building; and

        **(b)** Less than $2,500;

    "we" will settle the "physical loss" according to the provisions of **b.(1)** and **b.(2)** above whether or not actual repair or replacement is complete.

**(5)** "You" may disregard the replacement cost "physical loss" settlement provisions and make claim under this policy for "physical loss" to buildings on an "actual cash value" basis. "You" may then make claim for any additional amount according to the provisions of this Condition 3. Loss Settlement, provided "you" notify "us" of "your" intent to do so within 180 days after the date of "physical loss".

**4. Loss to a Pair or Set**

In case of "physical loss" to a pair or set "we" may elect to:

**a.** Repair or replace any part to restore the pair or set to its value before the "physical loss"; or

**b.** Pay the difference between "actual cash value" of the property before and after the "physical loss".

**5. Glass Replacement**

Claims for damage to glass caused by a Covered Cause of Loss will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

**6. Appraisal**

If "you" and "we" fail to agree on the amount of "physical loss", either may demand an appraisal of the "physical loss". In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, "you" or "we" may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of "physical loss". If the appraisers submit a written report of an agreement to "us", the amount agreed upon will be the amount of "physical loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of "physical loss". Each party will:

**a.** Pay its own appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

**7. Other Insurance and Service Agreement**

If a "physical loss" covered by this policy is also covered by:

**a.** Other insurance, "we" will pay only the proportion of the "physical loss" that the Limit of Insurance that applies under this policy bears to the total amount of insurance covering the "physical loss"; or

**b.** A "service agreement", this insurance is excess over any amounts payable under any such agreement.

**8. Legal Action Against Us**

No legal action can be brought against "us" unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of "physical loss".

**9. Our Option**

"We" may repair or replace any part of the damaged property with material or property of like kind and quality, if "we" give "you" written notice within 30 days after "we" receive "your" signed, sworn proof of "physical loss".

**10. Loss Payment**

"We" will adjust all losses with "you". "We" will pay "you" unless some other person is named in the policy or is legally entitled to receive payment. Claims will be payable 30 days after "we" receive "your" proof of "physical loss" and:

**a.** Reach agreement with "you";

**b.** There is an entry of a final judgment; or

**c.** There is a filing of an appraisal award with "us".

## 11. Abandonment of Property

"We" need not accept any property abandoned by an "insured".

## 12. Mortgage Clause

a. If a mortgagee is named in this policy, "we" will pay a "physical loss" under Section I - Coverage A or B to "you" and the mortgagee as interests appear. If more than one mortgagee is named, "we" will pay in the same order or precedence of the mortgages.

b. If "we" deny "your" claim, that denial will not apply to a valid claim of the mortgagee, provided the mortgagee:

  (1) Notifies "us" of any change in ownership, occupancy or substantial change in risk of which they are aware;

  (2) Pays any premium due under this policy on demand, if "you" have neglected to pay the premium; and

  (3) Submits a signed, sworn statement of "physical loss" within 60 days after receiving notice from "us" of "your" failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

c. If "we" decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

d. If "we" pay the mortgagee for any "physical loss" and deny payment to "you":

  (1) "We" receive all rights of the mortgagee under the mortgage on the property; or

  (2) At "our" option, "we" may pay the mortgagee the whole principal on the mortgage plus accrued interest. In this event, "we" will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgaged debt.

e. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

## 13. No Benefit to Bailee

"We" will not recognize an assignment or grant any coverage that benefits a person or organization holding, storing or transporting property for a fee, regardless of any other provision in this policy.

## 14. Recovered Property

If "you" or "we" recover any property for which "we" have made payment under this policy, "you" or "we" will notify the other of the recovery. At "your" option, the property will be returned to or retained by "you" or it will become "our" property. If the recovered property is returned to or retained by "you", the payment for "physical loss" will be adjusted based on the amount "you" received for the recovered property.

## 15. Volcanic Eruption and Earthquake Period

a. One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

b. One or more earthquake shocks that occur within a 72-hour period shall constitute a single earthquake.

## 16. Concealment or Fraud

"We" provide coverage to no "insureds" under Section I of this policy if, whether before or after a "physical loss", an "insured" has:

a. Intentionally concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made false statements;

relating to this insurance.

**17. Deductible**

    **a.** "We" will not pay for "physical loss" caused by a Covered Cause of Loss other than earthquake in any one incident until the amount of "physical loss" exceeds the Deductible shown in the Declarations. "We" will then pay the amount of "physical loss" in excess of the Deductible, up to the applicable Limit of Insurance, after any deduction required by Section I, **D.** Section I - Condition **3.** Loss Settlement.

    **b.** "We" will pay only that part of the "physical loss" caused by earthquake that is in excess of 10% of the limit of insurance that applies to Coverage **A.** This deductible shall apply to the total "physical loss" under Coverages **A, B** and **C.**

**18. Loss Payable**

    **a.** If the Declarations show a loss payee for certain listed insured personal property, "we" will pay a "physical loss" under Coverage **C,** with respect to that property, to "you" and the loss payee as interests appear.

    **b.** "We" shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

    **c.** "We" will provide the same notice of cancellation or non-renewal to the loss payee as "we" provide to "you".

# SECTION II - LIABILITY COVERAGES

## A. SECTION II - COVERAGES

### 1. COVERAGE E - PERSONAL LIABILITY

**Insuring Agreement**

    **a.** "We" will pay those sums the "insured" becomes legally obligated to pay as damages because of "bodily injury", "personal injury" or "property damage" to which this insurance applies. Damages include prejudgment interest awarded against the "insured" on that part of any judgment "we" become obligated to pay and which falls within the applicable Limit of Insurance shown in the Declarations. "We" will have the right and duty to defend the "insured" against any "suit" seeking those damages. However, "we" will have no duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "personal injury" or "property damage" to which this insurance does not apply. "We" may, at "our" discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount "we" will pay for damages is limited as described in Section II, **D.** Section II - Conditions, Condition **1.** Limit of Insurance; and

        **(2)** "Our" right and duty to defend ends when "we" have exhausted the applicable Limit of Insurance in the payment of judgments or settlements under Section II - Coverage **E.**

    No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under Section II, **C.** Section II - Additional Coverages.

    **b.** This insurance applies to "bodily injury", "personal injury" or "property damage" only if:

        **(1)** The "bodily injury", "personal injury" or "property damage" is caused by an "occurrence"; and

        **(2)** The "bodily injury" or "property damage" occurs during the "coverage term"; or

        **(3)** The "personal injury" results from an "occurrence" that takes place during the "coverage term".

    **c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

### 2. COVERAGE F - MEDICAL PAYMENTS TO OTHERS

**Insuring Agreement**

    **a.** "We" will pay medical expenses as described below for "bodily injury" caused by an accident that happens to:

    **(1)** A person on the "insured location" with the permission of an "insured"; or

    **(2)** A person away from the "insured location", if the "bodily injury":

        **(a)** Arises out of a condition of the "insured location" or the ways immediately adjoining;

        **(b)** Arises out of the activities of an "insured";

        **(c)** Arises out of the actions of a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

        **(d)** Arises out of the actions of an animal owned by or in the care of an "insured";

    provided that:

        **1)** The accident takes place during the "coverage term";

        **2)** The expenses are incurred and reported to "us" within three years of the date of the accident; and

        **3)** The injured person submits to examination, at "our" expense, by physicians of "our" choice as often as "we" may reasonably require.

  **b.** "We" will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance as described in Section II, **D.** Section II - Conditions, Condition **1.** Limit of Insurance. "We" will pay reasonable expenses for:

    **(1)** First aid administered at the time of an accident;

    **(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

    **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

  **c.** This coverage, Coverage F - Medical Payments to Others, does not apply to "you" or "your" "resident relatives".

## B. SECTION II - EXCLUSIONS

### 1. Applicable to Coverage E - Personal Liability

The following exclusions apply to Coverage E - Personal Liability:

This insurance does not apply to:

  **a. Expected or Intended Injury**

    "Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of one or more "insureds" or which is in fact expected or intended by one or more "insureds", even if the injury or damage is:

    **(1)** Of a different degree or type than actually expected or intended; or

    **(2)** Sustained by a different person, entity, real or personal property, than initially expected or intended.

    However, this Exclusion **1.a.** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property or to deny payment to an innocent co-"insured" who did not cooperate in or contribute to the creation of the loss if:

    **(1)** Such loss arose out of a pattern of criminal domestic violence and abuse: and

    **(2)** The perpetrator of the loss is criminally prosecuted for the act causing the loss.

    If we pay a claim pursuant to this exception, our payment to the "insured" is limited to that "insured's" insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more that the Limit of Liability.

  **b. Business Pursuits**

    "Bodily injury", "personal injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This Exclusion

**1.b.** applies to, but is not limited to, an act, error or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

This Exclusion **1.b.** does not apply to:

(1) The rental or holding for rental of an "insured location":

    (a) On an occasional basis if used only as a residence;

    (b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

    (c) In part, as an office, school, studio or private garage; or

(2) An "insured" under the age of 21 years involved in a part-time or occasional self-employed "business" with no "employees".

**c. Professional Services**

"Bodily injury", "personal injury" or "property damage" arising out of the rendering or failing to render professional services.

**d. Non-Insured Locations**

"Bodily injury", "personal injury" or "property damage" arising out of a premises:

(1) Owned by an "insured";

(2) Rented to an "insured"; or

(3) Rented to others by an "insured";

that is not an "insured location".

**e. Motor Vehicles**

"Bodily injury", "personal injury" or "property damage" arising out of:

(1) The ownership, maintenance, occupancy, operation, use, loading or unloading of "motor vehicles" owned or operated by or rented or loaned to an "insured";

(2) The entrustment of a "motor vehicle" by an "insured" to any person;

(3) The failure to supervise or negligent supervision of any person by an "insured" involving the ownership, maintenance, occupancy, operation, use, loading or unloading of a "motor vehicle"; or

(4) Vicarious liability, whether or not statutorily imposed, for the actions of any person or organization using a "motor vehicle".

This exclusion does not apply to the following described "motor vehicles", provided they are not being:

    (a) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

    (b) Rented to others by an "insured";

    (c) Used to carry persons or cargo for a charge; or

    (d) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

Described "motor vehicles":

    1) A trailer not towed by or carried on a "motor vehicle";

    2) A "motor vehicle" designed for recreational use off public roads which is not subject to motor vehicle registration and:

        a) Not owned by an "insured"; or

Includes copyrighted material of ISO

**b)** Owned by an "insured" provided the "occurrence" takes place on an "insured location" as described in Paragraphs **a.**, **b.**, **d.**, **e.**, or **h.** of the definition of "insured location";

**3)** A motorized golf cart ; or

**4)** A "motor vehicle" not subject to motor vehicle registration which is:

    **a)** Used to service an "insured's" residence;

    **b)** Designed for assisting the handicapped and, at the time of an "occurrence" it is:

      **(i)** Being used to assist a handicapped person; or

      **(ii)** Parked on an "insured location"; or

    **c)** In dead storage on an "insured location".

**f. Watercraft**

"Bodily injury", "personal injury" or "property damage" arising out of:

**(1)** The ownership, maintenance, occupancy, operation, use, loading or unloading of an "excluded watercraft";

**(2)** The entrustment of an "excluded watercraft" by an "insured" to any person;

**(3)** The failure to supervise or negligent supervision of any person by an "insured" involving the ownership, maintenance, occupancy, operation, use, loading or unloading of an "excluded watercraft"; or

**(4)** Vicarious liability, whether or not statutorily imposed, for the actions of any person or organization using an "excluded watercraft".

This exclusion does not apply to watercraft described in Paragraphs **a.** and **b.** of the definition of "excluded watercraft":

    **(a)** If an "insured" acquires ownership of the watercraft during the "coverage term" and declares in writing their intent to insure that watercraft with "us", and such notice is delivered to "our" agent or "us" within 45 days of the acquisition of that watercraft. Should "we" decline to insure that watercraft after receiving the aforementioned notice, any coverage under this policy for that watercraft will cease at the earlier of:

      **1)** 30 days after "our" declination;

      **2)** The securing of insurance coverage for the watercraft elsewhere; or

      **3)** The expiration of this policy;

    **(b)** If the watercraft is owned by an "insured" at the inception of this policy and specified in the Declarations;

    **(c)** To "bodily injury", "personal injury" or "property damage" arising out of the occasional, infrequent use of watercraft not owned by an "insured"; or

    **(d)** While the watercraft is stored.

**g. Aircraft**

"Bodily injury", "personal injury" or "property damage" arising out of:

**(1)** The ownership, maintenance, occupancy, operation, use, loading or unloading of an "aircraft";

**(2)** The entrustment of an "aircraft" by an "insured" to any person;

**(3)** The failure to supervise or negligent supervision by an "insured" of any person involving the ownership, maintenance, occupancy, operation, use, loading or unloading of an "aircraft"; or

Includes copyrighted material of ISO Properties, Inc. with its permission.

EXECUTIVE-ICV (5/00)
Case 3:08-cv-00267-HSM-HBG Document 1-1 Filed 07/10/08 Page 36 of 52 PageID #: 39

    **(4)** Vicarious liability, whether or not statutorily imposed, for the actions of any person or organization using an "aircraft".

**h. Hovercraft**

    "Bodily injury", "personal injury" or "property damage" arising out of:

    **(1)** The ownership, maintenance, occupancy, operation, use, loading or unloading of a "hovercraft";

    **(2)** The entrustment of a "hovercraft" by an "insured" to any person;

    **(3)** The failure to supervise or negligent supervision of any person by an "insured" involving the ownership, maintenance, occupancy, operation, use, loading or unloading of a "hovercraft"; or

    **(4)** Vicarious liability, whether or not statutorily imposed, for the actions of any person or organization using a "hovercraft".

**i. Injury to a Fellow Employee**

    "Bodily injury", "personal injury" or "property damage" to:

    **(1)** A fellow employee of an "insured" occurring in the course of employment;

    **(2)** A fellow employee of an "insured" sustained in the "workplace"; or

    **(3)** The spouse, child, parent, brother or sister of that fellow employee as a consequence of Paragraphs **(1)** or **(2)** above.

    This exclusion applies:

    **(a)** Regardless of the capacity an "insured" is deemed to hold; and

    **(b)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**j. War**

    "Bodily injury", "personal injury" or "property damage" caused directly or indirectly by war, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**k. Communicable Disease**

    "Bodily injury", "personal injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

**l. Molestation, Corporal Punishment or Abuse**

    "Bodily injury", "personal injury" or "property damage" liability based upon, arising out of, directly or indirectly resulting from or in consequence of, or involving any actual, alleged or threatened:

    **(1)** Molestation;

    **(2)** Corporal punishment (other than administered by teachers); or

    **(3)** Abuse.

**m. Controlled Substances**

    "Bodily injury", "personal injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Includes copyrighted material of ISO Properties, Inc. with its permission.

Page 29 of 38

Case 5:08-cv-05261-JSM-HBG   Document 1-1   Filed 07/10/08   Page 37 of 52   PageID #: 40

**n. Fuel System**

"Bodily injury", "personal injury" or "property damage" arising out of the actual, alleged, or threatened discharge, seepage, emission, migration, release or escape of fuel from a "fuel system".

**o. Assessments and Contracts**

Liability:

(1) For "your" share of any assessment charged against all members of an association, corporation or community of property owners, except as provided in Section II, C. Additional Coverages, 4. Assessments; or

(2) Under any contract or agreement entered into by an "insured". However, this Exclusion, **o.(2)**, does not apply to written contracts:

(a) That directly relate to the ownership, maintenance or use of an "insured location"; or

(b) Where the liability of others is assumed by "you" prior to an "occurrence";

unless excluded in **o.(1)** above or elsewhere in this policy.

**p. Insured's Property**

"Property damage" to property owned by "you" or an "insured" described in Paragraphs **a.** or **b.** of the definition of "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

**q. Property Rented to an Insured**

"Property damage" to property rented to, occupied or used by or in the care of an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location". This exclusion does not apply to "property damage" caused by water, fire, smoke, or explosion.

**r. Workers Compensation**

"Bodily injury" or "personal injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

(1) Workers' compensation law;

(2) Non-occupational disability law; or

(3) Occupational disease law.

**s. Violation of Another's Rights, Political Activity, Known Falsity, Prior Publication, Contractual Liability, Criminal Acts, Employment Related Injuries and Advertising, Broadcasting or Telecasting**

"Personal injury":

(1) Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury";

(2) Committed by or at the direction of an "insured" in the course of any political or "business" activity;

(3) Sustained by any person as a result of an offense directly or indirectly related to the employment of such person by an "insured"; or

(4) Arising out of:

(a) Oral or written publication of material whose first publication took place before the beginning of the "coverage term";

(b) Liability assumed by an "insured" under any contract or agreement except any indemnity obligation assumed by an "insured" under a written contract directly relating to the ownership, maintenance or use of an "insured location";

(c) A criminal act committed by or at the direction of an "insured";

(d) Oral or written publication of material, if done by or at the direction of an "insured" with knowledge of its falsity; or

(e) Advertising, broadcasting or telecasting by or for an "insured".

t. **Nuclear**

"Bodily injury", "personal injury" or "property damage" arising from a "nuclear hazard".

u. **Injury to an Insured**

"Bodily injury" or "personal injury" to "you" or an "insured" described in Paragraphs a. or b. of the definition of "insured".

This exclusion also applies to any claim or "suit" brought against "you" or an "insured":

(1) To repay; or

(2) Share damages with;

Another person or organization who may be obligated to pay damages because of "bodily injury" or "personal injury" to an "insured".

v. **Discrimination**

"Bodily injury", "personal injury" or "property damage" arising out of discrimination (including but not limited to racial discrimination, sexual discrimination, religious discrimination or age discrimination), including fines or penalties imposed by law.

w. **Lead**

(1) "Bodily injury", "personal injury" or "property damage" arising out of, resulting from, or in any way caused by or contributing to the actual, alleged or threatened ingestion, inhalation, absorption of, exposure to or presence of lead in any form emanating from any source; or

(2) Any liability, cost or expense arising out of, resulting from or in any way related to any:

(a) Claim, suit, request, demand, directive, or order by or on behalf of any person, entity, or governmental authority that an "insured", or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess the effects of lead in any form; or

(b) Claim or suit, by or on behalf of any person, entity, or governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating or detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead in any form.

"We" shall not be obligated to investigate, defend, or indemnify an "insured", or any person or entity claiming any right under the policy for the matters excluded in w. above.

Exclusions d., e., f. and g. do not apply to "bodily injury" or "personal injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

2. **Applicable to Coverage F - Medical Payments to Others**

The following exclusions apply to Coverage F - Medical Payments to Others:

This insurance does not apply to "bodily injury":

a. **Excluded Under Coverage E**

Excluded under Section II - Coverage E.

**b. Residence Employee**

To a "residence employee" if it occurs off the "insured location" and does not arise out of or in the course of the "residence employee's" employment by an "insured".

**c. Workers' Compensation**

To any person, eligible to receive any benefits required to be provided or voluntarily provided under any workers' or workmens' compensation, non-occupational disability or occupational disease law.

**d. Nuclear Hazard**

From a "nuclear hazard".

**e. Residents**

To any person other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

## C. SECTION II - ADDITIONAL COVERAGES

"We" cover the following in addition to the Limits of Insurance:

**1. Defense Expenses**

"We" pay:

   **a.** Expenses incurred by "us" and costs taxed against an "insured" in any "suit" "we" defend;

   **b.** Premiums on bonds required in a "suit" defended by "us", but not for bond amounts greater than the Limit of Insurance for Section II - Coverage E. "We" are not obligated to apply for or furnish any bond;

   **c.** Reasonable expenses incurred by an "insured" at "our" request, including actual loss of earnings (but not loss of other income) up to $250 per day for assisting "us" in the investigation or defense of any claim or "suit"; and

   **d.** All interest awarded against the "insured" on that part of any judgment:

   **(1)** That is within the applicable Limit of Insurance that "we" become obligated to pay; and

   **(2)** That accrues after entry of the judgment and before "we" have paid, offered to pay or deposited in court the part of the judgment which "we" are obligated to pay.

**2. First Aid Expenses**

"We" will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. "We" will not pay for first aid to an "insured".

**3. Damage to Property of Others**

   **a.** "We" will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

   **b.** "We" will not pay for "property damage":

   **(1)** To property covered under Section I of this policy;

   **(2)** To real property rented to an "insured";

   **(3)** To property owned by an "insured", a tenant of an "insured", or a resident in "your" household;

   **(4)** To a recreational vehicle such as a snowmobile, golf cart, camper, motor home or similar vehicle, or farm machinery or equipment, rented, leased or borrowed by an "insured"; or

   **(5)** Arising out of:

   **(a)** A "business" engaged in by an "insured";

EXECUTIVE KV (0-02)67-HSM-HBG Properties, Inc. with its permission.
Case 3:08-cv-00067-HSM-HBG Document 1-1 Filed 07/10/08 Page 40 of 52 PageID #: 43

    **(b)** Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

    **(c)** The ownership, maintenance, occupancy, operation, use, loading or unloading of "aircraft", "hovercraft", watercraft or "motor vehicles".

    This Exclusion **3.b.(5)(c)** does not apply to a "motor vehicle" that:

      **1)** Is designed for recreational use off public roads;

      **2)** Is not owned by an "insured"; and

      **3)** At the time and place of an "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property; or

  **(6)** Caused intentionally by an "insured" who is 13 years of age or older.

**4. Assessments**

  **a.** "We" will pay up to $1,000 for "your" share of any assessment charged during the "coverage term" against "you" by a corporation or association of property owners, when the assessment is made as a result of:

    **(1)** "Bodily injury" or "property damage" which occurs during the "coverage term" and which is not excluded under Section II of this policy;

    **(2)** "Personal injury" that results from an "occurrence" that takes place during the "coverage term" and which is not excluded under Section II of this policy; or

    **(3)** Liability for an act taken during the "coverage term" of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

      **(a)** The director, officer or trustee is elected by the members of a corporation or association of property owners; and

      **(b)** The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

  **b.** This coverage applies only to assessments charged against "you" as owner or tenant of the "residence premises".

  **c.** "We" do not cover assessments charged against "you" or a corporation or association of property owners by any governmental body.

  **d.** Regardless of the number of assessments, the limit of $1,000 is the most "we" will pay for damages arising out of:

    **(1)** One "occurrence"; or

    **(2)** A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

## D. SECTION II - CONDITIONS

**1. Limit of Insurance**

  **a.** Regardless of the number of "insureds", claims made or persons injured, "our" total liability under Coverage E for all damages resulting from any one "occurrence" shall not exceed the Limit of Insurance for Coverage E as shown in the Declarations.

  **b.** "Our" total liability under Coverage F for all medical expenses payable for "bodily injury" to one person as the result of one accident shall not exceed the Limit of Insurance for Coverage F as shown in the Declarations.

  **c.** However, "our" total liability under Coverage E for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened:

    **(1)** Inhalation of;

    **(2)** Ingestion of;

Includes copyrighted material of ISO
Properties, Inc., with its permission
Case 3:08-cv-00267-JSM-HBG Document 1-5 Filed 07/10/08 Page 41 of 52 PageID #: 341

      **(3)** Contact with;

      **(4)** Absorption of;

      **(5)** Exposure to;

      **(6)** Existence of; or

      **(7)** Presence of,

any "fungi", wet or dry rot, or bacteria on or within a building or structure, including its contents, whether occurring suddenly or gradually, will not be more than the Section II Coverage E Aggregate Sublimit of Insurance for Fungi, Wet or Dry Rot, or Bacteria stated in the Section II - Fungi, Wet or Dry Rot, or Bacteria - Limit of Insurance Schedule. This is the most "we" will pay for all "occurrences" at each "location" in any "coverage term", regardless of the:

      **(a)** Number of persons injured;

      **(b)** Number of persons whose property is damaged;

      **(c)** Number of "insureds"; or

      **(d)** Number of "occurrences" or claims made.

This sublimit is within, but does not increase, The Section II - Coverage E Limit of Insurance. However, this sublimit is not applicable to liability arising solely out of any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for human ingestion.

**2. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each "insured" against whom a claim is made or "suit" is brought.

**3. Duties in the Event of Occurrence, Claim or Suit**

In case of an "occurrence", claim or "suit" "you" and any other involved "insured" will perform the following duties. "We" have no duty to provide coverage under this policy if "your" or any other "insured's" failure to comply with the following duties is prejudicial to "us". "You" and any other involved "insured" shall cooperate with "us" in seeing that these duties are performed:

**a.** "You" and any other involved "insured" must see to it that "we" are notified as soon as practicable of an "occurrence" which may result in a claim or "suit". To the extent possible, notice should include:

      **(1)** How, when and where the "occurrence" took place;

      **(2)** The names and addresses of any injured persons and witnesses; and

      **(3)** The nature and location of any injury or damage arising out of the "occurrence".

**b.** If a claim is made or "suit" is brought against an "insured", "you" and any other involved "insured" must:

      **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

      **(2)** Notify "us" as soon as practicable.

**c.** "You" and any other involved "insured" must:

      **(1)** Immediately send "us" copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      **(2)** Authorize "us" to obtain records and other information;

      **(3)** Cooperate with "us" in the investigation, settlement or defense of the claim or "suit";

(4) Assist "us", upon "our" request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply;

(5) If requested by "us", submit to examination under oath, while not in the presence of any other "insured", and sign the same; and

(6) Under the Additional Coverage - Damage to Property of Others - submit to "us" within 60 days after the claim, a sworn statement of damages and exhibit the damaged property, if within the "insured's" control.

**d.** No "insured" will, except at that "insured's" own cost, voluntarily make any payment, assume any obligation or incur any expense, other than for first aid to others at the time of the "bodily injury", without "our" consent.

**e.** Notification of an "occurrence", claim or "suit" is to be directed to:

(1) The agency listed in the Declarations; or

(2) The Cincinnati Insurance Companies, P.O. Box 145496, Cincinnati, Ohio 45250-5496, Phone number (513) 870-2000.

**4. Duties of an Injured Person - Coverage F - Medical Payments to Others**

The injured person or someone acting on behalf of the injured person shall:

**a.** Give "us" written proof of claim, under oath if required, as soon as practicable; and

**b.** Execute authorization to allow "us" to obtain copies of medical reports and records.

**5. Payment of Claim - Coverage F - Medical Payments to Others**

Payment under this coverage is not an admission of liability by an "insured" or "us".

**6. Legal Action Against Us**

**a.** No legal action can be brought against "us" unless there has been full compliance with all of the terms under Section II of this policy.

**b.** No one shall have any right to join "us" as a party to any legal action against an "insured". Further, no legal action with respect to Section II - Coverage E shall be brought against "us" until the obligation of such "insured" has been determined by final judgment or agreement signed by "us".

**7. Bankruptcy of an Insured**

Bankruptcy or insolvency of an "insured" shall not relieve "us" of any of "our" obligations under this policy.

**8. Other Insurance - Coverage E - Personal Liability**

This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the Limits of Insurance that apply in this policy.

**9. Concealment or Fraud**

"We" do not provide coverage to an "insured" who, whether before or after an "occurrence", has:

**a.** Intentionally concealed or misrepresented any material fact or circumstance;

**b.** Engaged in fraudulent conduct; or

**c.** Made false statements;

relating to this insurance.

## SECTION III - COMMON CONDITIONS

The following Conditions apply to both Section I and Section II of this policy.

**1. Liberalization Clause**

a. If "we" make a change which broadens coverage under this edition of "our" policy without additional premium charge, that change will automatically apply to "your" insurance as of the date "we" implement the change in "your" state, provided that this implementation date falls within 60 days prior to or during the Policy Period stated in the Declarations.

b. This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

   (1) A subsequent edition of this policy; or

   (2) An amendatory endorsement.

## 2. Cancellation

a. The first Named Insured shown in the Declarations may cancel this policy at any time by returning it to "us" or by notifying "us" in writing of the date cancellation is to take effect.

b. "We" may cancel this policy subject to the provisions of this condition by notifying the first Named Insured shown in the Declarations in writing of the date cancellation takes effect. This cancellation notice may be delivered to the first Named Insured shown in the Declarations, or mailed to the first Named Insured shown in the Declarations at their mailing address shown in the Declarations or last known to us.

Proof of mailing will be sufficient proof of notice.

   (1) When the premium has not been paid, "we" may cancel at any time by notifying the first Named Insured shown in the Declarations at least 14 days before the date cancellation takes effect.

   (2) When this policy has been in effect for 60 days or less and is not a renewal with "us", "we" may cancel for any reason by notifying the first Named Insured shown in the Declarations at least 14 days before the date cancellation takes effect.

   (3) When this policy has been in effect for more than 60 days, or at any time if it is a renewal with "us", "we" may cancel only for one or more of the following reasons:

      (a) Upon discovery of fraud or material misrepresentation made by, or with the knowledge of, the named insured in obtaining or continuing this policy, or in presenting a claim under this policy;

      (b) Under discovery of willful or reckless acts or missions on the part of the named insured which increase any hazard insured against;

      (c) Upon the occurrence of a change in the risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed;

      (d) If there is a violation of any local fire, health, safety, building or construction regulation, or ordinance with respect to any insured property of the occupancy of such property which substantially increases any hazard insured against;

      (e) If we are unable to reinsure the risk covered by the policy; or

      (f) If there is a determination by the commissioner that the continuation of the policy would place the insurer in violation of the Kentucky insurance code or regulations of the commissioner.

      This can be done by notifying you at least 75 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to "us", "we" will refund it to the first Named Insured shown in the Declarations within a reasonable time after the date cancellation takes effect.

## 3. Nonrenewal

"We" may elect not to renew this policy. "We" may do so by delivery to the first Named Insured shown in the Declarations, or mailing to the first Named Insured shown in the Declarations at their mailing address shown in the Declarations, written notice at least 75 days before:

a. The expiration date of the policy, for a policy written for a term of one year or less; or

b. An anniversary date of the policy, for a policy written for a term of more than one year or for an indefinite term.

Includes copyrighted material of ISO

Executive v. GAB 3:07-cv-00367-HSM-HBG Properties, Inc. Document 1-6 Filed 07/10/08 Page 44 of 52 Page 36 of 38 PageID #: 47

If we mail or deliver a renewal notice to you at least 30 days before the end of the policy period, stating the renewal premium and its due date, the policy will terminate without further notice unless the renewal premium is received by us or our authorized agent by the due date.

If this policy terminates because the renewal premium has not been received by the due date, we will, within 15 days, mail or deliver to you at your last known address a notice that the policy was not renewed and the date it was terminated.

Proof of mailing will be sufficient proof of notice.

**4. Assignment**

Assignment of this policy shall not be valid unless "we" give "our" written consent.

**5. Subrogation**

a. An "insured" may waive in writing before a "physical loss" or an "occurrence" all rights of recovery against any person. If not waived, "we" may require an assignment of rights of recovery for a "physical loss" to the extent that payment is made by "us".

b. If an assignment is sought, the "insured" shall sign and deliver all related papers and cooperate with "us" in a reasonable manner, and shall do nothing to prejudice "our" subrogation rights..

c. Subrogation does not apply under Section II to Coverage **F** - Medical Payments to Others or Section II - Additional Coverage **3.** Damage to Property of Others.

If we pay an innocent co-"insured" for a loss caused by an act of domestic abuse, the rights of that "insured" to recover damages from the perpetrator of the abuse are transferred to us to the extent of our payment. That "insured" may not waive such rights to recover against the perpetrator of the domestic abuse.

**6. Death**

If "you" die:

a. "We" insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under this policy at the time of death;

b. "Insured" includes:

**(1)** Any member of "your" household who is an "insured" at the time of "your" death, but only while a resident of the "residence premises"; and

**(2)** With respect to "your" property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

**7. Insured's Representative Clause**

By acceptance of this policy "you" and any other "insured" agree that the first Named Insured listed in the Declarations will act on both "your" and their behalf with respect to:

a. The acceptance of endorsements or other policy modifications; and

b. The giving or receiving of any other notice provided for in this policy.

Further, by acceptance of this policy, "you" and any other "insured" agree to accept and be bound by any actions taken by the first Named Insured with regard to **a.** or **b.** above.

**8. Premiums**

The first Named Insured shown in the Declarations:

a. Is responsible for the payment of all premiums; and

b. Will be the payee for any return premiums "we" pay.

**9. Changes**

This policy contains all the agreements between "you" and "us" concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy

with "our" consent. This policy's terms can be amended or waived only by endorsement issued by "us" and made a part of this policy.

"Our" request for an appraisal or examination shall not waive any of "our" rights.

## SPECIAL NOTICE - HOME CHILD CARE BUSINESS

## LIMITED SECTION I - PROPERTY COVERAGES AND NO SECTION II - LIABILITY COVERAGES FOR HOME CHILD CARE BUSINESS

If an "insured" regularly provides home child care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business". Mutual exchange of home child care services, however, is not considered compensation. The rendering of home child care services by an "insured" to a relative of an "insured" is not considered a "business".

Therefore, with respect to a home child care enterprise which is considered to be a "business", this policy:

1. Does not provide **SECTION II - LIABILITY COVERAGES** because a "business" of an "insured" is excluded under Exclusion **1.b.** of Section II - Exclusions;

2. Does not provide **SECTION I - COVERAGE B** coverage where other structures are used in whole or in part for "business";

3. Limits coverage for property used for home child care enterprise to $2,500 because **SECTION I - ADDITIONAL COVERAGES** - Item **n.** imposes that limit on property used at any time or in any manner for any "business" purpose;

4. Provides coverage for **Section I - Business Property Coverage** and / or Other Structures Coverage for Business Purposes and / or for **Section II - Business Liability Coverage** only when the Residential Business Endorsement is attached to the policy and the applicable premium is charged.

This special notice does **not** constitute a reduction of coverage.



# THE
# CINCINNATI INSURANCE COMPANIES

THE CINCINNATI INSURANCE COMPANY      THE CINCINNATI INDEMNITY COMPANY
THE CINCINNATI CASUALTY COMPANY      THE CINCINNATI LIFE INSURANCE COMPANY

Mailing Address:      P.O. BOX 145496
CINCINNATI, OHIO 45250-5496

# NOTICE OF PRIVACY PRACTICES

**OUR PRIVACY PLEDGE**

You have received this notice because you have a policy with us or you have applied for or purchased a product or service from one of our family of companies. We believe that information personal to you should be respected and protected. For this reason, we are committed to protecting your personal information and using it only as appropriate to provide you with the best possible service, products and opportunities. This privacy notice describes our information practices and policies. It applies to our relationship with you if you are an individual who inquires about or obtains products or services from us for personal, family or household purposes.

**INFORMATION WE COLLECT**

In order to provide our products or services, we may collect personal information about you from a variety of sources, including:

- information that comes from you during the application process;
- information about you from our affiliates, your independent insurance agent, governmental entities, consumer reporting agencies and other sources;
- with your prior written consent, a medical professional who has treated you or members of your family.

The type of information that we collect depends on the product or service requested, but may include:

- credit history;
- motor vehicle reports;
- inspections on your property;
- claims history;
- information concerning your previous insurance policies;
- information to properly investigate and resolve any claims.

**INFORMATION WE DISCLOSE TO THIRD PARTIES**

**We do not sell your personal information to anyone.** We do not disclose your personal information to third parties - people and companies that are not affiliated with us - for their own marketing purposes. For this reason, no "opt-out" is required. If we share some personal information about you with third parties without your specific authorization, it is to provide you with products and services that you request or expect from us, and as otherwise permitted by law.

For example, we may disclose the personal information we collect (as described above) as necessary to:

- service your policy, lease or account;
- investigate and pay claims;
- comply with state and federal regulatory requests or demands;
- process other transactions that you request.

To whom we make such disclosures depends on the product or service requested but may include:

- your independent insurance agent;
- insurance regulators;
- reinsurance companies;
- consumer-reporting and fraud prevention agencies;
- your mortgage or premium finance company;
- insurance adjusters.

We also may disclose personal information about you to companies that perform marketing services on our behalf or to other financial service providers with which we have joint marketing agreements. If information is disclosed, it will not result in telemarketing or direct mail marketing.

## INFORMATION SECURITY

We restrict access to personal information about you to those employees who need to know that information in order to provide products and services to you. We maintain physical, electronic and procedural safeguards to guard your personal information.

## A SPECIAL WORD ABOUT OUR INSURANCE INFORMATION PRACTICES

The information in this section applies to you only if you applied for or purchased an insurance product from us for personal, family or household purposes. This section is intended to supplement, but not replace, the other information contained in this Notice of Privacy Practices.

You have the right to access the personal information that we collect about you in connection with your insurance transactions with us. If you believe that any of that information is in error, you have the right to request us to correct it. Send your written request, including your policy number and the information about which you are concerned, to the address listed below.

If you would like a more detailed notice regarding our insurance information practices and your information privacy rights, please contact us at the address or phone number given below.

## E-MAIL COMMUNICATIONS

We will not send you an e-mail in which we ask for personal information from you (such as a Social Security number) or link you to our Web site to ask you for such information unless we reference a specific transaction or information that you have requested. If you receive an unsolicited e-mail from The Cincinnati Insurance Companies, please forward the e-mail to us at *privacy@cinfin.com* and delete it from your computer.

## INFORMATION WE SHARE WITHIN OUR CORPORATE FAMILY

In order to best serve you, we may share information about our experiences and transactions with you within our family of companies. Such information may include your payment or claims history or the types of insurance coverages you purchase from us.

The following companies comprise the Cincinnati Financial Corporation family of companies:

- Cincinnati Financial Corporation
- The Cincinnati Insurance Company
- The Cincinnati Casualty Company
- The Cincinnati Indemnity Company
- The Cincinnati Life Insurance Company
- CFC Investment Company
- CinFin Capital Management Company

This privacy notice applies to and is provided on behalf of all of the companies in the Cincinnati Financial Corporation family of companies with the exception of CFC Investment Company and CinFin Capital Management Company, which are governed by separate and specific privacy policies.

## ONGOING ACCESS TO OUR PRIVACY POLICY

We will provide a notice of our privacy policy annually, as long as you have a continuing customer relationship with us. This policy may change from time to time, but you can always review our current policy by visiting our Web site at www.cinfin.com or by contacting us at:

> The Cincinnati Insurance Companies
> Attn: Staff Underwriting - Privacy
> P.O. Box 145496
> Cincinnati, Ohio 45250-5496
> Phone: (888) 744-2170 (toll free) or (513) 870-2000
> E-mail: *privacy@cinfin.com*

# NOTICE TO POLICYHOLDERS
## YOUR CREDIT-BASED INSURANCE SCORE

As part of underwriting your account, The Cincinnati Insurance Company has requested your credit-based insurance score. This insurance score is based on information contained in your credit file. Your insurance score is one of several factors used in determining the premium you pay.

Due to your credit-based insurance score or the fact that ChoicePoint, the consumer reporting agency we use, does not have a score for you, your policy is not eligible for the maximum credits (i.e. decreases in premium) that are available to policyholders with higher scores. Your credit-based insurance score does not result in a surcharge or debit to your premium.

The consumer reporting agency did not make any decision on how your premium was determined, but you do have the right to request a copy of your credit report(s) within 60 days. To obtain a free copy of the report(s) that generated your credit-based insurance score, you may (within 60 days): write to the address; call the number; or access the website shown below.

ChoicePoint Insurance Consumer Center
P.O. Box 105108
Atlanta, GA 30348-5108

1-800-456-6004
Monday-Friday, 8:00 am-7:00 pm (EST)
24-hour answering machine

www.consumerdisclosure.com

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SECTION I - FUNGI, WET OR DRY ROT, OR BACTERIA - LIMIT OF INSURANCE SCHEDULE

SCHEDULE

Section I - Fungi, Wet or Dry Rot, or Bacteria - Limit of Insurance: $10,000

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SECTION II - FUNGI, WET OR DRY ROT, OR BACTERIA - LIMIT OF INSURANCE SCHEDULE

SCHEDULE

Section II - Fungi, Wet or Dry Rot, or Bacteria - Aggregate Sublimit of Insurance: $50,000

In witness whereof, the company issuing this policy has caused this policy to be signed by its Secretary and its President, but this policy shall not be valid or effective, where mandated by law, until countersigning on the Declarations page by a duly authorized agent of the Company. This endorsement is executed by the company stated in the declarations.

**The Cincinnati Insurance Company**

**The Cincinnati Indemnity Company**

Secretary                    President