UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

| | |
|---|---|
| JEFF GIERINGER, ) | |
| ) | |
|    *Plaintiff*, ) | |
| ) | Case No. 3:08-cv-267 |
| v. ) | Judge Mattice |
| ) | |
| THE CINCINNATI INSURANCE ) | |
| COMPANIES, ) | |
| ) | |
|    *Defendant*. ) | |

**MEMORANDUM AND ORDER**

Plaintiff Jeff Gieringer brings this action against Defendant The Cincinnati Insurance Companies, alleging that Defendant breached the insurance contract between the parties when it failed to pay benefits for personal property lost in a house fire. Plaintiff also alleges that Defendant violated the Tennessee Consumer Protection Act by failing to honor the terms of the insurance policy. Before the Court is Defendant's Motion for Summary Judgment [Court Doc. 15].

For the reasons set forth below, Defendant's Motion for Summary Judgment [Court Doc. 15] will be **DENIED**.

**I.     SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may bear this burden by either producing evidence that demonstrates the absence of a genuine issue of material fact, or by simply " 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. To refute such a showing, the nonmoving party may not simply rest on its pleadings. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *see Anderson*, 477 U.S. at 249. The nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Anderson*, 477 U.S. at 254. Thus, if the plaintiff must ultimately prove his case at trial by a preponderance of the evidence, the Court must, on motion for summary judgment, determine whether a jury could reasonably find by a

preponderance of the evidence that the plaintiff's factual contentions are true. *See id.* If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.   FACTS

The facts, viewed in the light most favorable to the Plaintiff, are as follows.

Defendant issued a homeowner's insurance policy to Plaintiff on September 8, 2006. (Court Doc. 1-1, Compl. ¶ 3.) This policy, No. HO10341086, covered the period of September 8, 2006 through September 8, 2007. (*Id.* ¶ 3.) This policy was later renewed for a policy period of September 8, 2007 to September 8, 2008, and Defendant issued another complete set of policy documents with this renewal. (Court Doc. 16-4, Renewal Policy.) At the time that these policies were issued, Plaintiff lived at 4769 Pleasant Grove Road in Lexington, Kentucky. (Compl. ¶ 4.) Both policies list Plaintiff's address and the policy "residence premises" as 4769 Pleasant Grove Road in Lexington, Kentucky, and both policies indicate that "[u]nless otherwise stated, the residence premises covered by this policy is located at the above address." (Renewal Policy at 1; Court Doc. 1-1, Original Policy at 6.[1])

On March 21, 2007, Plaintiff and his wife purchased another home located at 950

---

[1]   Citation to the page numbers for both insurance policies will coincide with the page numbers of the overall Court Document, not the page numbers of the insurance policy.

Campbell Leed Road in Gatlinburg, Tennessee. (Court Doc. 23, Gieringer Aff. ¶ 2.) Plaintiff continued to live in Kentucky while he started a new business in Tennessee, but he moved approximately 5% of his personal belongings to the property in Tennessee in March or April of 2007. (*Id.* ¶¶ 2, 4.) On January 18, 2008, Plaintiff and his family completely moved all of their personal property to the residence in Gatlinburg with the intent to make that home their primary residence. (*Id.* ¶¶ 4-6.) On January 24, 2008, the Gatlinburg property, along with all of Plaintiff's personal property, was destroyed in a fire. (*Id.* ¶ 7.) Plaintiff filed a claim with Defendant shortly after the fire to recover for the personal property loss, but Defendant denied the majority of Plaintiff's claim, paying only $1,000 under the policy. (Compl. ¶¶ 5-6.) Defendant's refusal to pay the full amount of personal property coverage was based on a provision in the renewal policy which states that "[c]overage for personal property usually situated at an 'insured's' residence, other than the 'residence premises,' is $1,000." (Renewal Policy at 13.) Because Plaintiff's personal property at the time of the loss was located at the Tennessee property, and not the Kentucky "residence premises," Defendant denied the remainder of Plaintiff's claim.

## III. ANALYSIS

Plaintiff first asserts a breach of insurance contract claim against Defendant, alleging that Defendant breached the insurance policy by refusing to pay Plaintiff's claim for personal property. (Compl. ¶ 7.) Defendant claims that it is entitled to judgment as a matter of law on this claim because Defendant was only required to pay Plaintiff $1,000 under the express terms of the renewal policy. (Court Doc. 15, Def.'s Mot. for Summ. J. ¶ 1.) Defendant further claims that Plaintiff's Tennessee Consumer Protection Act claim

should be dismissed because, if the insurance coverage claim is dismissed, Plaintiff's coverage is completely limited by the policy language, and Defendant should not be liable for any other amount. (*Id.* ¶ 2.)

Plaintiff asserts that only the renewal policy contains the language that would limit insurance coverage to $1,000, but because the terms contained in the renewal policy differed from the terms in the original policy and decreased the amount of insurance coverage, the original policy terms should control. (Court Doc. 24, Pl.'s Resp. to Mot. for Summ. J. at 3-4.) Furthermore, if the original policy controls, the ambiguities in that policy's language create questions of fact which may only be appropriately decided by a jury. (*Id.* at 4-5.)

In cases such as this, arising under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, the Court must apply the choice of law rules of the state in which the Court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 501 (6th Cir. 2003). In Tennessee, the law of the place where a contract is made governs the construction and validity of the contract, absent a choice of law clause. *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973). The Court cannot locate any choice of law clause in either policy, and both policies were created and issued in Kentucky; therefore, Kentucky law applies to the interpretation and construction of these insurance policies.[2]

---

[2] The Court notes that both parties cited exclusively to Tennessee law in their briefs, but there is no evidence of an agreement between the parties to apply Tennessee law in lieu of Kentucky law.

### A. Plaintiff's Breach of Insurance Contract Claim

#### 1. *Original Policy v. Renewal Policy*

To address the contentions in Defendant's Motion for Summary Judgment and Plaintiff's Response, the Court must first determine if the terms of the renewal policy control, or if the changes in coverage in the renewal policy are rejected in favor of applying the original policy terms. When Kentucky law is silent as to the subject at hand, the Court can presume that Kentucky law would not differ from the law in Tennessee. *See Mut. Life Ins. Co. of New York v. Templeton*, 362 S.W.2d 938, 942 (Tenn. Ct. App. 1962) (citing *Marsh v. Fowler*, 340 S.W.2d 881, 883 (Tenn. 1960) and *Hamilton v. Peoples*, 274 S.W.2d 630, 633-34 (Tenn. Ct. App. 1954)). The Court has reviewed Kentucky law to determine if Kentucky courts have ever addressed the narrow issue of whether the terms of the original or renewal insurance policy control when the insurer has imposed changes to coverage. The Court finds that Kentucky law is silent on this issue.[3] Accordingly, the Court concludes that it is appropriate to turn to Tennessee law on this subject.

The Tennessee Court of Appeals case of *Brewer v. Vanguard Ins. Co.*, 614 S.W.2d 360 (Tenn. Ct. App. 1980), provides the Court with the most helpful guidance as to whether

---

[3] The Court notes that Kentucky courts have addressed tangential issues concerning insurance policy terms and renewal policies, but have not explicitly ruled on this specific question. The Kentucky cases with some applicability all involve automobile insurance policies and have other factual differences that prevent the Court from accepting the statements made within as determinative of this narrow issue. *See Adkins v. Kentucky Nat'l Ins. Co.*, 220 S.W.3d 296, 300 (Ky. Ct. App. 2007) (finding notifications of a change in coverage valid in the context of "stacking" uninsured/underinsured motorist coverage in an automobile insurance policy); *Marcum v. Rice*, 987 S.W.2d 789, 791-92 (Ky. 1999) (noting, in the same context, that "where the language of an insurance contract unambiguously explains the terms and conditions, no separate formal notification is required to effectuate a policy provision unless the unannounced change misleads the insured"); *MFA Mut. Ins. Co. v. Black*, 441 S.W.2d 134, 135-36 (Ky. 1969) (holding that a newly issued, independent insurance policy for a new vehicle–to replace an old policy on an old vehicle--is a different contract and may have different terms).

the terms of the original policy or the renewal policy control. In *Brewer*, the court stated the following:

> When an insurance policy renewal is made, unless otherwise provided and called to the attention of the insured, the terms of the original policy become a part of the renewal contract of insurance. See 13A Appleman, Insurance Law and Practice, s 7648; 17 Couch on Insurance 2nd, ss 64:40, 68:61. When renewing an insurance policy, the insurer must call attention to any changes in the terms and, if it fails to do so, such change is no part of the contract. Where the parties to a contract of insurance agree to a renewal, it is presumed that the same terms, conditions, premiums and subject matter obtain in the new contract as in the old. 13A Appleman, supra, s 7648. "An accurate definition of renewal cannot be made until it is first determined whether the renewal takes effect as an extension or continuation of the original policy or whether it represents the formation of a new although identical contract of insurance." 17 Couch on Insurance 2nd, s 68:2 at 659. Whether a renewal insurance policy is a new and independent contract or whether it is an extension or continuation of the original contract depends primarily upon the intention of the parties as ascertained from the instrument itself. Lewis v. Western Assur. Co., 175 Tenn. 37, 130 S.W.2d 982 (1939); 17 Couch, supra, s 68:39.

*Id.* at 363. This language clearly states Tennessee law on this issue and applies to the situation at hand. The first inquiry for the Court, therefore, is to review the instrument itself to determine if the renewal policy was intended to be a renewal or was intended to be a separate and independent policy.

In this case, the initial policy, No. HO10341086, was issued on September 8, 2006 for a period from September 8, 2006 to September 8, 2007. (Compl. ¶ 3.) This policy states "New Business" in the top righthand corner. (Original Policy at 1.) The renewal policy, with the same policy number, was presumably issued to be effective on September 8, 2007 for a period from September 8, 2007 to September 8, 2008. (Renewal Policy at 1.) This policy clearly states "Renewal" in the top righthand corner. (*Id.*) Both policies

contain 38 similar pages in the bulk of the documentation. (Original Policy; Renewal Policy.) In addition, the categories of coverage are the same, although the limits of coverage are slightly increased–along with an increase in the total premium–in the renewal policy.

Based on these facial characteristics, the Court finds that the renewal policy was, indeed, just that–a renewal of the existing policy. The Court further finds that it was the intent of the parties to issue a renewal policy because the instrument clearly notes that it is a renewal and, although the issuance of the policy documents essentially created a new contract between the parties, it was clearly more so an "extension or continuation of the original contract" than a "new and independent contract." *Brewer*, 614 S.W.2d at 363.

Defendant cites from another portion of the *Brewer* decision which reads that "[w]here a new policy is delivered, the insured is presumed to have consented to any new terms therein if the policy is retained without complaint and is not rejected until after a loss." (*Id.*; Court Doc. 26, Def.'s Reply at 1.) Because the renewal policy in this case was issued in complete form, rather than a one- or two-page renewal notification, Defendant argues that it is a "new" policy for the purposes of this principle. Defendant neglects to acknowledge the next few statements in *Brewer*, however, where the court states:

> But courts of most jurisdictions notice the fact that it is customary for insureds to accept insurance policies without reading them. . . . And the mere failure to read a policy, especially if it is a renewal, is not such negligence as will defeat the right to reform the policy.

*Id.* The Court concludes that although the renewal policy was issued in complete form, it does not follow that Plaintiff automatically consented to any change in policy terms. Instead, the *Brewer* court specifically stated that this general contract rule was tempered

by the fact that most insureds failed to read their policies, especially renewal policies. The applicable section of Couch on Insurance now reads:

> The failure of the insured to read the policy is likely to have less significance when the policy in question is a renewal of a policy which has already been in existence. In such case, it is reasonable for the insured to assume that the policy of renewal will be the same as the policy which had already been worked out . . . the insured had the right to assume that the terms were the same as those of the original, if the insurer does not bring the changes to the attention of the insured.

Couch on Insurance 3d § 27:78. Therefore, the Court finds that the applicable guiding principle is that when issuing a renewal policy, an insurer must call to the attention of the insured any changes in coverage from the original policy to the renewal policy. If the insurer fails to call attention to these changes, the changes are rejected and the terms of the original policy will apply. The Court concludes that application of this principle is appropriate because it is fair to both parties; it protects the layperson insured from susceptibility to surprise exclusions due to a natural and widespread failure to read long legal documents, but imposes little extra burden on the part of the insurer.

Accordingly, the Court has reviewed the renewal policy to determine if Defendant attempted to call Plaintiff's attention to this coverage change. The Court notes that the renewal policy includes a page numbered MI1801 and titled "Notice to Policyholders" that addresses this change. (Renewal Policy at 45.) This Notice contains boilerplate language stating that the summary notice itself does not provide coverage, and then has two short paragraphs to indicate areas of modification. (*Id.*) The second paragraph reads:

> 2. Coverage for personal property usually situated at an "insured's" residence, other than the "residence premises" is $1,000,' replaces Coverage for personal property usually situated at an "insured's" residence not

> listed in the Declarations or elsewhere in this policy,
> other than the "residence premises", is $1,000.'

(*Id.*) The Court finds, however, that there are significant flaws with this "notice" that lead the Court to conclude that it did not properly or adequately call attention to the crucial coverage change.

First, this Notice appears to be the very last page of the renewal policy, and burying a Notice on the last page of a policy would not be an effective notification of a coverage change. (*Id.*) Although the second page of the policy lists this document and another under their title, "Notice to Policyholders," these documents are listed under the category called "Other Coverages, Endorsements and Charges" and there is nothing else in the beginning pages of the policy to indicate any changes in coverage. (*Id.* at 1-3.) Second, the Notice itself does not even state that this is a change in coverage. While another "Notice to Policyholders" document in the renewal policy begins by stating that "[t]his is a notice of a change in your policy," this Notice document does not. (*Id.* at 43, 45.) In fact, the beginning paragraph of this document does not state anything about changes to coverage; instead, Defendant merely uses the word "replace" to indicate changes in both paragraphs. (*Id.* at 45.)

Finally, the Court finds that the language outlining the change in coverage is extremely confusing. In fact, the language appears to point out a more technical change to policy language rather than an actual change in coverage. To compare this Notice to the provisions in the policies, the original policy reads, in relevant part:

c. Limitations

. . .

(1) The following types of property are covered only up to the limit of insurance referenced:

(a) Coverage for personal property usually situated at an "insured's" residence not listed in the Declarations or elsewhere in this policy, other than the "residence premises", is $1,000. However, this limitation does not apply to personal property:

1) Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in;

2) In a newly acquired principal residence for 30 days immediately after "you" begin to move the property there; or

3) Owned by or used by a student, as provided in Paragraph c. of the definition of "resident relative."

(Original Policy at 18.) The renewal policy, in contrast, states:

c. Limitations

. . .

(1) The following types of property are covered only up to the limit of insurance referenced:

(a) Coverage for personal property usually situated at an "insured's" residence, other than the "residence premises", is $1,000.

(Renewal Policy at 13.) It is obvious from the plain language in both policies that this was a somewhat significant change reducing the number of exclusions from a strict coverage

limitation, not merely a technical change in language that had no effect on coverage. Instead of outlining the change sufficiently, this Notice only notes that there is a replacement of language in c.(1)(a), but leaves out the language in the original policy starting with "[h]owever, this limitation does not apply to. . . ." Therefore, if the Court takes the Notice at face value and replaces just the language indicated, the exclusions in the original policy, located at 1) - 3), would still be part of the policy. This is not the case, however, and the change reflected in the renewal policy is more significant.

Based on the location of this Notice in the policy documents, the fact that it contains no explicit language notifying the insured of changes in coverage, and the confusing and misleading information documenting the change, the Court must conclude that the Defendant did not adequately call Plaintiff's attention to the changes in coverage. Accordingly, the Court finds that Defendant's failure to notify Plaintiff of this change in coverage necessitates a rejection of the changed terms in the renewal policy that apply in this situation, and an application of the relevant terms contained in the original policy.

### 2. *Ambiguity of Original Policy Terms*

Now that the Court has determined that the terms of the original policy apply, the Court will now assess the policy terms in accordance with the rules of contract construction and interpretation. Contract interpretation is a question of law. *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky. Ct. App. 2000). Kentucky law is clear that "[w]hen no ambiguity exists in the contract, [courts should] look only as far as the four corners of the document to determine the parties' intentions." *3D Enters. Contracting Corp. v. Louisville & Jefferson County Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005). The plain terms of an insurance policy will be enforced unless they contain ambiguities or

contradict public policy or statutes. *See York v. Kentucky Farm Bureau Mut. Ins. Co.*, 156 S.W.3d 291, 294 (Ky. 2005); *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002).

"A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent, yet reasonable, interpretations." *New Life Cleaners v. Tuttle*, 292 S.W.3d 318, 322 (Ky. Ct. App. 2009); *Cantrell*, 94 S.W.3d at 385. Plaintiff argues that the terms in the original policy under this coverage section are ambiguous. Accordingly, the Court's first task is to determine whether the language of the contact is clear with only one meaning, or if the terms are ambiguous.

The Court finds the language contained in this policy is ambiguous because it is "susceptible to different or inconsistent, yet reasonable, interpretations." *Tuttle*, 292 S.W.3d at 322. The relevant section at issue in the original policy is reproduced above and states that the limitation of $1,000 in coverage does not apply to personal property "[i]n a newly acquired principal residence for 30 days immediately after 'you' begin to move the property there." (Original Policy at 18.) The application of this provision is crucial to determine if Plaintiff's personal property falls within this exception to the $1,000 limitation in coverage. The list of definitions in the policy does not include any definition for "newly acquired" or "move," however, which creates significant ambiguities given the facts applicable to this case. (*Id.* at 10-15.)

Plaintiff purchased the Tennessee residence on March 21, 2007 and moved a small portion of his personal property to that residence in March and April 2007. It is unclear, however, whether this was a "newly acquired principal residence" as of March 21, 2007,

-13-

or if the residence had to become a "principal" residence before the 30 day period of coverage would commence. There is also an ambiguity as to the term "move" and whether the 30 day period started during March or April 2007, when 5% of Plaintiff's belongings were transferred to the new property, or on January 18, 2008, when Plaintiff moved the bulk of his personal property to the Tennessee residence. The Court finds that an individual could read this provision and reasonably determine that the 30 day period commenced in March or April 2007, and an individual could also reasonably determine that it commenced in January 2008.

Because the Court has determined that ambiguities exist in the relevant policy terms, the Court cannot give full effect to this provision in favor of Defendant. Therefore, the Court cannot declare that Defendant properly paid Plaintiff pursuant to the policy provisions, and Defendant is not entitled to judgment as a matter of law on this claim. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's breach of insurance contract claim is **DENIED**.

### B. Plaintiff's Tennessee Consumer Protection Act Claim

In his Complaint, Plaintiff asserts that Defendant violated the Tennessee Consumer Protection Act ("TCPA"), Tennessee Code Annotated § 47-18-101 *et seq.*, by failing to honor the terms of the insurance policy and failing to honor Plaintiff's claim for the personal property loss. (Compl. ¶ 8.) Defendant argues that, if the Court grants summary judgment on the policy coverage issue, it is also entitled to summary judgment as to Plaintiff's TCPA claim because Plaintiff's coverage is limited to what was paid under the policy. (Def.'s Mem. at 8-9.) Defendant offers no other argument for the dismissal of Plaintiff's TCPA

claim.

Because the Court has denied Defendant's request for summary judgment on the breach of insurance contract claim, the Court will also deny Defendant's motion for summary judgment on the TCPA claim. The Court has not declared that Defendant is only liable for $1,000 under the insurance policy, so the Court cannot declare that Plaintiff has exhausted his remedies against Defendant.

Moreover, the Court agrees with Plaintiff that his TCPA claim is dependent on the resolution of various factual issues, including whether Defendant and its agents acted in bad faith in denying the claim, and if Defendant generally engaged in unfair or deceptive practices with the handling of this insurance claim which resulted in damage to Plaintiff. The Court cannot resolve these material factual issues at the summary judgment stage. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's TCPA claim is **DENIED**.

IV. **CONCLUSION**

For the reasons discussed above, Defendant's Motion for Summary Judgment [Court Doc. 15] is **DENIED**.

**SO ORDERED** this 22nd day of March, 2010.

                                              */s/Harry S. Mattice, Jr.*
                                            HARRY S. MATTICE, JR.
                                    UNITED STATES DISTRICT JUDGE