UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

JEFF GIERINGER,           )
                          )
     *Plaintiff*,         )
                          )      Case No. 3:08-cv-267
v.                        )      Judge Mattice
                          )
THE CINCINNATI INSURANCE     )
COMPANIES,              )
                          )
     *Defendant*.      )

## <u>MEMORANDUM AND ORDER</u>

Before the Court is Defendant's Motion for Summary Judgment [Court Doc. 51].

Defendant previously filed a Motion for Summary Judgment [Court Doc. 15] which was

denied by the Court's Order of March 22, 2010 [Court Doc. 31]. Defendant now moves for

judgment as a matter of law based on facts that it obtained during discovery.

For the reasons set forth below, Defendant's Motion for Summary Judgment [Court

Doc. 51] will be **GRANTED**.

## I.    SUMMARY JUDGMENT STANDARD

Defendant filed its Motion for Summary Judgment on December 3, 2010. (Court

Doc. 51.) Plaintiff has not filed a response to this Motion, and the Court deems Plaintiff to

have waived opposition to the Motion. E.D.TN. LR 7.1. The Court, however, cannot

automatically grant the summary judgment motion merely because Plaintiff has not filed

a response in opposition. The Court is required to examine the record and determine

whether the movant has met its burden of demonstrating the absence of a genuine issue

of material fact and that it is entitled to summary judgment as a matter of law. *Stough v.*

*Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998); *Wilson v. City of Zanesville*, 954

F.2d 349, 351 (6th Cir. 1992); *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991).

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc*., 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may bear this burden by either producing evidence that demonstrates the absence of a genuine issue of material fact, or by simply " 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. To refute such a showing, the nonmoving party may not simply rest on its pleadings. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *see Anderson*, 477 U.S. at 249. The nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Anderson*, 477 U.S. at 254. Thus, if the plaintiff must ultimately prove his case at trial by a preponderance of the evidence, the Court must, on motion for summary judgment, determine whether a jury could reasonably find by a preponderance of the evidence that the plaintiff's factual contentions are true. *See id.* If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.    FACTS

The facts, viewed in the light most favorable to the Plaintiff, are as follows.

Defendant issued a homeowner's insurance policy to Plaintiff on September 8, 2006. (Court Doc. 1-1, Compl. ¶ 3.) This policy, No. HO10341086, covered the period of September 8, 2006 through September 8, 2007. (*Id.* ¶ 3.) This policy was later renewed for a policy period of September 8, 2007 to September 8, 2008, and Defendant issued another complete set of policy documents with this renewal. (Court Doc. 16-4, Renewal Policy.) At the time that these policies were issued, Plaintiff lived at 4769 Pleasant Grove

Road in Lexington, Kentucky. (Compl. ¶ 4.) Both policies list Plaintiff's address and the policy "residence premises" as 4769 Pleasant Grove Road in Lexington, Kentucky, and both policies indicate that "[u]nless otherwise stated, the residence premises covered by this policy is located at the above address." (Renewal Policy at 1; Court Doc. 1-1, Original Policy at 6.[1])

On March 21, 2007, Plaintiff and his wife purchased another home located at 950 Campbell Leed Road in Gatlinburg, Tennessee. (Court Doc. 23, Gieringer Aff. ¶ 2.) Plaintiff continued to live in Kentucky while he started a new business in Tennessee, but he moved approximately 5% of his personal belongings to the property in Tennessee in March or April of 2007. (*Id.* ¶¶ 2, 4.) On January 18, 2008, Plaintiff and his family completely moved all of their personal property to the residence in Gatlinburg with the intent to make that home their primary residence. (*Id.* ¶¶ 4-6.) On January 24, 2008, the Gatlinburg property, along with all of Plaintiff's personal property, was destroyed in a fire. (*Id.* ¶ 7.) Plaintiff filed a claim with Defendant shortly after the fire to recover for the personal property loss, but Defendant denied the majority of Plaintiff's claim, paying only $1,000 under the policy. (Compl. ¶¶ 5-6.) Plaintiff communicated with Defendant's representative Danny Glasgow during this process and alleged that Mr. Glasgow agreed that Plaintiff was 110% covered for the loss. (Court Doc. 24, Pl.'s Resp. to Def.'s First Mot. for Summ. J. at 3.) Two weeks later, Plaintiff learned that Defendant was denying the claim. (*Id.*) Defendant's refusal to pay the full amount of personal property coverage was based on a provision in the renewal policy which states that "[c]overage for personal

---

[1]    Citation to the page numbers for both insurance policies will coincide with the page numbers of the overall Court Document, not the page numbers of the insurance policy.

property usually situated at an 'insured's' residence, other than the 'residence premises,' is $1,000." (Renewal Policy at 13.) Because Plaintiff's personal property at the time of the loss was located at the Tennessee property, and not the Kentucky "residence premises," Defendant denied the remainder of Plaintiff's claim.

In the discovery which has occurred since the Court's ruling on Defendant's prior Motion for Summary Judgment, Defendant has learned additional facts which it represents as relevant. First, the deposition of Plaintiff Jeff Gieringer revealed that Plaintiff had never read the original or the renewal insurance policy at issue in this case. (*Id.* at 4-5; Court Doc. 53-1, Pl.'s Dep. at 26.) In addition, Plaintiff did not contact Defendant to inquire about coverage until several weeks after the fire, when it was suggested to him by the fire investigator and an individual from the Red Cross that his homeowner's policy in Kentucky might cover the personal property. (Def.'s Mem. at 6-7.) Before the loss, Plaintiff had not talked to his local insurance agent in Kentucky about whether the policy would cover the Tennessee property. (Pl.'s Dep. at 15.) Moreover, Plaintiff had sought and obtained two homeowner's insurance policies for the Tennessee home that provided insurance coverage consecutively from March 2007 through October 2007, but both policies were eventually canceled for nonpayment. (*Id.* at 7-8.) Finally, during Plaintiff's conversation with Mr. Glasgow, he told Plaintiff that they would be covered if everything was as Plaintiff had represented, but did state that there could be some issues with coverage because Plaintiff was in Tennessee. (*Id.* at 4-7; Pl.'s Dep. at 42-43.)

## III.    ANALYSIS

Defendant asserts that facts obtained through discovery now entitle it to judgment

as a matter of law on both of Plaintiff's claims – that which was asserted pursuant to the insurance policy as well as Plaintiff's Tennessee Consumer Protection Act ("TCPA") claim. (Court Doc. 52, Def.'s Mem. of Law in Supp. of Def.'s Mot. for Summ. J.)  The Court will address both arguments in turn.

## A.     Insurance Policy

Defendant argues that Plaintiff's failure to read the original policy negates the Court's prior ruling on its first Motion for Summary Judgment, in which the Court rejected the renewal policy and determined that the original policy applied.  (Def.'s Mem. at 8.) Defendant now urges the Court to revisit its ruling because the new facts show that Plaintiff had no expectation of coverage under this insurance policy, and Defendant's notice of the change in policy terms should be irrelevant in a case that is not about reformation.  (*Id.* at 8-10.)  Defendant further asserts that the cases relied upon in the Court's Memorandum and Order involved pre-loss misrepresentations of coverage by insurance agent and the instant case involves, if any, post-loss representations.  (*Id.*)  Accordingly, Defendant argues that the Court should find that the renewal policy applies and hold that the renewal policy terms limit Plaintiff's recovery to $1,000.  (*Id.* at 10-11.)  Defendant does not cite any law in support of these contentions, but asserts that *Brewer v. Vanguard Ins. Co.*, 614 S.W.2d 360 (Tenn. Ct. App. 1980) and a case cited by it, *Henry v. Southern Fire & Cas. Co.*, 330 S.W.2d 18 (Tenn. Ct. App. 1958),[2] are distinguishable from the instant case and should not apply.  (*Id.* at 8-10.)

---

[2]     *Brewer* was a case relied upon by the Court in its Memorandum and Order.  The Court applied Tennessee law because Kentucky law was silent on this issue.  *See Mut. Life Ins. Co. of New York v. Templeton*, 362 S.W.2d 938, 942 (Tenn. Ct. App. 1962).

The Court agrees with Defendant that the facts obtained during discovery necessitate a change in the Court's analysis. Although the Court finds that its previous ruling is a correct statement of law under the proper circumstances, including the circumstances based on the facts known to the Court at that time, the additional facts now before it militate a different result. The general principle which governs insurance policies is that the insured is obligated to read the policy and is bound to its contents. *Bidwell v. Shelter Mut. Ins. Co.*, No. 2009-CA-001298-MR, 2010 WL 3187986, at *6 (Ky. App. Aug. 13, 2010) (holding that "an insured is obligated to read the policy of insurance in its entirety and is bound by its conspicuous and unambiguous terms.").[3] Although Kentucky has adopted the doctrine of reasonable expectations, the doctrine generally would not apply unless the insured had read the policy. *See* 2 Couch on Ins. § 22:11 ("an insured's reasonable expectations upon reading the policy should guide construction. . ."); *see also Brown v. Indiana Ins. Co.*, 184 S.W.3d 528, 543 (Ky. 2005) (stating that "an insured is entitled to all the coverage he may reasonably expect to be provided according to the terms of the policy."). Kentucky applies an objective test rather than a subjective one, but other states with a similar objective test have held that the doctrine still requires an insured to read the policy. *See Frey v. United Servs. Auto. Ass'n*, 743 N.W.2d 337, 342-43 (Minn. Ct. App. 2008) (the doctrine "protects the objectively reasonable expectations of the insured" . . . but "does not destroy the insured's obligation to read the policy" and instead "holds an insured to a reasonable understanding of that policy.").

---

[3]    As the Court determined in its previous Memorandum and Order, Kentucky law applies to this case because the insurance policy at issue was created in Kentucky. (Court Doc. 31, Mem. and Order at 5.)

There is an exception to this general rule with respect to renewal policies because the original policy, which accurately set out the terms as the parties to the insurance contract intended, cannot be changed without proper notice to the insured. Without notice of changes, the renewal policy no longer sets out the coverage as reasonably expected by the insured upon review of the original policy. *See* 2 Couch on Ins. § 27:79 (stating that, in the case of a renewal policy, "it is reasonable for the insured to assume that the policy of renewal will be the same as the policy which had already been worked out . . . the insured is not estopped to demand reformation merely because he or she failed to read the renewal policy, since the insured had the right to assume that the terms were the same as those of the original."). Reformation of a original policy or a renewal policy, therefore, is necessary in cases of mutual mistake or fraud, where what the insured intended or expected to have covered is not included. *See Grisby v. Mountain Valley Ins. Agency*, 795 S.W.2d 372, 374 (Ky. 1990); *see also* 2 Couch on Ins. § 27:2 ("[w]here there was inequitable conduct on the part of the insurer coupled with mistake of fact on the insured's part, reformation of the renewal policy to conform with the original policy is authorized.").[4]

---

[4]   The case Defendant distinguishes, *Henry v. Southern Fire & Cas. Co.*, 330 S.W.2d 18 (Tenn. Ct. App. 1959), provides one example of this basic principle. In *Henry*, the plaintiffs told their insurance agent that they wanted full coverage on all of their equipment and whatever they were doing in any location. *Id.* at 24. The insurance agent represented that the policy gave them full coverage, when the policy in fact did not cover trailers which were attached to trucks and used to transport logs as part of their logging business. *Id.* at 20. The *Henry* court cited to other cases for the proposition that it was within the insured's rights to rely on the good faith of the insurance agent and not careless "to suppose that a policy has been issued that will give protection under the stated facts relating to the application . . . the failure of the insured to inspect a policy after the receipt [is] not negligence barring recovery in action to reform the policy." *Id.* at 33 (citations omitted).

*Henry* is a typical case of reformation where an insured asks for specific coverage, the insurer represents that the policy contains the coverage, and the insurer does not provide the requested coverage. The resulting policy, therefore, was not what the insured contracted for due to mutual mistake or fraud, and reformation is possible. This can apply equally to both original policies and renewal policies; in the case of an original policy, if the policy is not what the parties intended to contract for, it may be reformed. In the case of a renewal policy, if the insurer changes coverage that

Because Plaintiff in the instant case did not read the original policy and procured separate insurance for the Tennessee home, he had no expectation of coverage under the original policy as to the narrow provision involving the transfer of personal belongings to another residence. Thus, there was nothing mistaken or fraudulent in the original policy that Plaintiff bargained for or expected which was not provided in that policy. Moreover, Plaintiff's failure to read the policy means that he did not have a reasonable understanding of the provision and expectation of coverage under it which could logically lead to an objection to the change in the renewal policy.

Therefore, reformation of the renewal policy to conform to the original policy is no longer the appropriate result in a case where Plaintiff did not read the original policy and had no expectation of coverage. The Court now holds that the renewal policy applies and the provision governing coverage for personal property situation at a residence other than the "residence premises" limits Plaintiff's recovery to $1,000. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's insurance policy claim is **GRANTED**.

## B.    Tennessee Consumer Protection Act Claim

Defendant also argues that these new facts warrant the dismissal of Plaintiff's claim asserted pursuant to the TCPA. (Def.'s Mem. at 11.) Defendant contends that the basis for this claim were allegations by Plaintiff that Defendant's representatives had assured him

_____

the insured reasonably expects to have based on their review or knowledge of the original policy, the renewal policy can be reformed to the terms of the original policy.

In this case, there is no evidence that Plaintiff made any specific requests for coverage or that the insurance agent represented that the applicable coverage was included when it was not. Simply put, there is no indication that the original policy in question did not accurately memorialize the requested coverage. The absence of evidence as to that issue, coupled with the new facts concerning Plaintiff's inaction (not reading the original policy) and action (obtaining separate insurance policies for the Tennessee home), render reformation of the renewal policy inappropriate in this case.

that the insurance policy would cover the loss, and those allegations are no longer factually accurate. (*Id.* at 11-12.) In the absence of facts that Defendant misled or deceived Plaintiff with regard to policy coverage, Defendant claims that there is no evidence to support the claim and it must be dismissed. (*Id.* at 12-13.)

The Court finds Defendant's argument concerning the TCPA claim to be well taken. In both the Complaint and the Amended Complaint, Plaintiff generally asserted that "the defendants have violated the Tennessee Consumer Protection Act by failing and refusing to honor the terms and conditions of its policy of homeowner's insurance coverage with the plaintiff and by failing to honor the plaintiff's claim for the total loss and destruction of their personal property." (Court Docs. 1-1 & 11-1, Compl. & Am. Compl. ¶ 8.) In the Court's Order on Defendant's first Motion for Summary Judgment, the Court stated that the claim "is dependent on the resolution of various factual issues, including whether Defendant and its agents acted in bad faith in denying the claim, and if Defendant generally engaged in unfair or deceptive practices with the handling of this insurance claim which resulted in damage to Plaintiff." (Mem. and Order at 15.) Defendant has now produced facts which establish that no misrepresentations were made by Mr. Glasgow,[5] and Plaintiff has not

---

[5] Specifically, Plaintiff's deposition testimony reveals that Mr. Glasgow made no inappropriate or misleading misrepresentations to Plaintiff about the success of his insurance claim. Plaintiff testified as follows:

> Q:   Now, let's look at the interrogatory answers. At some point you say that you spoke with Danny Glasgow who agreed 110 percent, and that's in quotes, that we were covered for the fire loss. See that?
> A:   Yes.
> Q:   Did you have that conversation with him?
> A:   Yes. Well, here is the way Danny stated it. He said if everything is **as presented**, he said you're covered a hundred and 10 percent. And he further stated that if we still resided in Kentucky, he would give me an advance check to begin replacing our possessions.
> Q:   Can you remember specifically what he said about that?

provided the Court with additional facts that would establish the existence of a remaining issue of material fact as to this claim. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's TCPA claim is **GRANTED**.

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment [Court Doc. 51] is **GRANTED**.

**SO ORDERED** this 4th day of February, 2011.


_____*/s/Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE

---

A:    He just basically said that normally what they would do is issue an advance check until – I guess that's when you have to fill all of those out, at least it's something to get you going, get you started. I told him, I said we're sitting here floundering, really, there's nothing and no way to replace anything. He said well, if you were still in Kentucky and the house up there was the house that burned, he said they would have already issued you an advance check to go on and start replacing some things. **He said that the issue is where we were in Tennessee, he said I don't know if that covers you or not.** But he said normally, he said you would have received an advance check by this point.

(Pl.'s Dep. at 42-43.) (emphasis added).